Ann CRISPIN, Petitioner,

v.

DEPARTMENT OF COMMERCE, Respondent.

Appeal No. 83–1368.

United States Court of Appeals, Federal Circuit.

April 19, 1984.

Phillip R. Kete, Washington, D.C., for petitioner. Robin M. Gerber, Washington, D.C., was on the brief.

---

Sandra P. Spooner, Washington, D.C., for respondent. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Beacham O. Brooker, Jr., Bethesda, Md.; Jon Pearson, Dept. of Commerce, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and KASHIWA, Circuit Judge.

KASHIWA, Circuit Judge.

This is an appeal from a decision of the Merit Systems Protection Board (Board) affirming petitioner's reassignment pursuant to an agency-wide reduction in force (RIF). Petitioner appeals the decision on the grounds that she was denied a hearing on the question of whether her competitive level was properly established. Because we hold that petitioner was entitled to a hearing on this issue, we vacate that portion of the Board's decision determining that petitioner's competitive level was properly established and remand the case to the Board for a full hearing on the merits of this issue.

*Background*

On March 21, 1982, petitioner, a Bureau of Census employee, was downgraded from a Grade 11 Training Specialist to a Grade 4 Clerk Typist, pursuant to an agency-wide reduction in force (RIF) affecting hundreds of employees. A large number of the affected employees appealed the RIF through their union. Most of the appeals, including petitioner's, were consolidated and assigned to one presiding official. There then ensued the following series of orders, motions, and responses thereto.

On May 17, 1982, the presiding official issued a first prehearing conference order requesting each employee to submit a statement of the issues presented. Petitioner complied with this order, filling out the provided form and raising the competi-

tive level issue by listing other employees doing the same job as she.

On May 21, 1982, the agency served requests for answers to interrogatories requesting the employees to specify their general allegation of errors. On this date the employees also filed a motion to compel the production of all position descriptions, which motion was subsequently denied. On June 9, 1982, the presiding official issued an order directing the employees to specify their general allegations of error and on June 11, 1982, the agency again filed requests for answers to interrogatories.

On June 21, 1982, the presiding official issued a final order of issue clarification dividing the various issues into two classes: issues of law to be briefed by the parties on or before July 16, 1982, and issues of fact to be set for a hearing. The question of whether competitive levels were properly established was expressly placed in the category of issues of law.

On June 29, 1982, the agency filed a motion for dismissal of certain appeals for failure to comply with portions of the June 21, 1982 order. Petitioner was not named in that motion and none of the alleged violations related to the competitive level issue. On July 2, 1982, the agency filed a further motion for dismissal. Again, the competitive level issue was not part of that motion.[1] On July 9, 1982, the presiding official issued an order granting the agency's motion to dismiss in part.

On July 16, 1982, in compliance with the June 21, 1982 order, the parties submitted briefs on the competitive level issue. Three days later, petitioner submitted a request for a hearing on this issue and the agency then submitted a response thereto.

On June 25, 1982, the presiding official held a mass hearing on the legitimacy of the RIF under 5 C.F.R. § 351.201(a) and on July 16, 1982, she held a hearing on whether petitioner was qualified for certain positions. Without explanation, the presiding

---

1. The agency did allege in this motion that petitioner failed to specify which records she was denied access to, a separate issue not before this court.

official denied petitioner's request for a hearing on the competitive level issue. However, in her decision affirming petitioner's reassignment, the presiding official reached the merits of this issue concluding that petitioner's competitive level was properly established:

> Review of the record and the comprehensive justifications submitted by the agency for establishment of competitive levels reveals no error. Moreover, I note that appellant has failed to raise a specific error in this appeal. Thus, I find that the agency has shown by a preponderance of the evidence that it properly established appellant's competitive level in accordance with 5 C.F.R. § 351.403(a). [Citations omitted.]

This appeal followed, the only issue being whether petitioner was entitled to a hearing on the competitive level issue.

### I

This court will reverse a decision of the Board if it is not supported by substantial evidence. 5 U.S.C. § 7703(c)(3). Petitioner argues that because she was denied a hearing on the competitive level issue and therefore not permitted to introduce evidence at a hearing, by definition the presiding official's decision cannot be supported by substantial evidence. The government responds by advancing a burden of proof argument which rests on the "evidence" submitted in the briefs of the parties pursuant to the presiding official's June 21, 1982 order.

The government correctly states that the Board will sustain an agency action if the decision is supported by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1). Citing

*Hishikawa v. Department of Agriculture,* 6 MSPB 428 (1981), the government then goes on to state that where an employee presents no evidence to the contrary, the agency may meet its burden by merely asserting that the competitive levels are properly established. The government then cites "evidence" from the briefs submitted by the parties to support its argument that the agency met its burden of proof under this theory.

As the government's argument rests on the "evidence" submitted in the briefs of the parties, it is necessary to review the events which led up to the presiding official's decision. First, it is to be noted that the presiding official requested that the parties brief the competitive level issue as a "legal" one, although it is clear that the issue of whether a particular competitive level was properly established involves a factual inquiry.[2] The parties complied with the presiding official's order and three days after submitting her brief, petitioner requested a hearing on this issue. The presiding official denied petitioner's request without stating her reasons for doing so. In her opinion, however, the presiding official decided the merits of this issue apparently relying on the briefs presented. Although the presiding official did not specifically refer to the briefs by name, she did discuss the contentions of the parties and it is this "evidence" upon which the government relies.

In her opinion the presiding official first discussed petitioner's arguments which included: (1) that all positions in the same grade and series must be placed in the same competitive level; (2) that the agency misidentified a large number of employees

---

**2.** The establishment of competitive levels for purposes of conducting a RIF is governed by 5 C.F.R. § 351.403(a) which provides:

> (a) Each agency shall establish competitive levels consisting of all positions in a competitive area and in the same grade or occupational level which are sufficiently alike in qualification requirements, duties, responsibilities, pay schedules, and working conditions, so that an agency readily may assign the incumbent of any one position to any of the other positions without changing the terms of his

appointment or unduly interrupting the work program.

Although it never addresses the issue directly, the government implicitly recognizes that the question of whether a particular competitive level is properly established is a factual question by the arguments it raises. For example, the government states that this court should affirm the presiding official's determination because the evidence presented by the agency clearly exceeds the substantial evidence standard.

as supervisors and therefore placed them in the wrong competitive levels; and (3) that the agency failed to use particular performance appraisal plans in establishing competitive levels. The presiding official then discussed the agency's contentions, stated that petitioner only raised general allegations of error, and concluded that the agency had established by a preponderance of the evidence that petitioner's competitive level was properly established.

Because the presiding official never stated why she denied petitioner a hearing, it is necessary for this court to make certain assumptions about what actually happened in this case. Accepting the government's argument in the most favorable light would mean that the presiding official granted the government summary judgment on the briefs presented. Although she never stated that she was doing so, this is in essence what the presiding official did in this case. The presiding official stated that the parties were to brief the competitive level issue as a legal one and she based her decision on the arguments presented in the parties' briefs.

However, the Board does not have available to it a summary judgment proceeding. 5 U.S.C. § 7701(a)(1), which covers appeals to the MSPB from agency actions, provides that:

An appellant shall have the right to a hearing for which a transcript will be kept.

The conference committee report which accompanied the Civil Service Reform Act of 1978 makes clear that this provision was meant to bar summary judgment proceedings:

### APPEALS TO THE MERIT SYSTEMS PROTECTION BOARD

### RIGHT TO A HEARING

The Senate bill provides that an employee is entitled to an evidentiary hearing before the Merit Systems Protection Board unless a motion for summary decision is granted. A motion for summary decision shall be granted if the presiding officer decides that there are no genuine and material issues of fact in dispute. The presiding officer may provide for discovery and oral representation of views, at the request of either party, in connection with a summary decision.

*The House amendment contains no provision for summary decision.* It provides that an employee has a right to a hearing before the MSPB for which a transcript will be kept and the right to be represented by an attorney or other representative.

*The conference substitute in section 7701(a) adopts the House provision so that the employee is entitled to a hearing on appeal to the Merit Systems Protection Board.* The hearing may be waived by the employee. [Emphasis added.] H.R.Rep. No. 95–1717, 95th Cong., 2d Sess. 137 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2871.

Therefore, because the presiding official had no authority to grant summary judgment, the government's arguments that it met its burden and that the presiding official's decision is supported by substantial evidence are simply not relevant to the basic issue in this case; namely, whether petitioner was entitled to introduce evidence at a hearing. Similarly, the government's argument that we should affirm the presiding official's decision because the question of reassignments is entitled to a strong presumption of correctness is also irrelevant. Such arguments address the weight to be given to the evidence presented and the standard of this court's review. They do not address the issue of whether the presiding official's refusal to hold a hearing on the competitive level issue was proper.

### II

Implicitly recognizing that petitioner had a right to a hearing under 5 U.S.C. § 7701(a)(1), the government also argues that the presiding official's denial of a hearing was a sanction for petitioner's refusal to respond to discovery or to the presiding official's orders. We disagree.

At the outset we note that under the regulations the presiding official does have

authority to impose sanctions for a party's failure to comply with an order. 5 C.F.R. § 1201.43.[3] These sanctions include, *inter alia*, drawing an inference in favor of one party or prohibiting a party from introducing evidence at a hearing.

The government states that on May 21 and on June 11, 1982, it served requests for interrogatories requesting the employees to identify the specific facts on which they based their allegations of error, and that on June 9, 1982, the presiding official issued an order directing the employees to specify the basis for their general allegations of error. It is from these facts that the government concludes that petitioner was denied a hearing as a sanction for her failure to respond.

However, in this case the government admits that the presiding official never in fact issued sanctions. The government would have this court uphold what would in effect be an "implicit sanction," something we decline to do.

Moreover, petitioner did not fail to comply with the presiding official's orders concerning the competitive level issue. On May 17, 1982, the presiding official issued a first prehearing conference order, which petitioner complied with, listing the issues she was requesting for review. On June 21, 1982, the presiding official issued a final order of issue clarification ordering the parties to brief the competitive level issue as one of law. Petitioner and the government complied with this order by submitting briefs by the deadline, July 16, 1982. The only motions by the government that could possibly be construed as motions for sanctions were two motions for dismissals filed by the government on June 29 and on July 2, 1982. However, the competitive level issue was not mentioned in either of these motions. Petitioner also was not named in the first motion and although she was named in the second motion it was on an entirely separate issue. Under these facts it is difficult to perceive how the government can argue that the presiding official's denial of a hearing was a sanction issued for petitioner's failure to respond.[4]

### III

Finally, the government argues that petitioner's case was among more than 200

---

3. § 1201.43 Sanctions.

The presiding official may impose sanctions upon the parties as necessary to serve the ends of justice, including but not limited to the instances set forth in paragraphs (a), (b), and (c) of this section.

(a) Failure to comply with an order. When a party fails to comply with an order, including an order for taking a deposition, the production of evidence within the party's control; a request for admission, and/or production of witnesses, the presiding official may:

(1) Draw an inference in favor of the requesting party with regard to the information sought;

(2) Prohibit the party failing to comply with such order from introducing evidence concerning, or otherwise relying upon testimony relating to the information sought;

(3) Permit the requesting party to introduce secondary evidence concerning the information sought; and

(4) Strike any part of the pleadings or other submissions of the party failing to comply with such request.

4. Under 5 U.S.C. § 7703 this court has jurisdiction to review certain final decisions of the Merit Systems Protection Board. A presiding official's decision becomes a final decision of the Board unless appealed to the Board within 30 days. 5 U.S.C. § 7701(e)(1). Petitioner and three other individuals allowed the presiding official's decision to become final and then appealed directly to this court. However, 128 individuals appealed from the presiding official's decision to the full Board. In the latter appeal, many issues were raised including the propriety of the presiding official's refusal to hold hearings on several issues other than the bona fides of the RIF. In *Abbot v. Department of Commerce, Bureau of Census,* MSPB Docket No. DC03518210884 (December 12, 1983), the Board found that although the presiding official erred in failing to notify the parties of her decision to impose sanctions, she did "in effect" impose such sanctions and upheld the denial of hearings on this basis. The government relies on this case in its statement of facts to apparently illustrate what happened in this case and also to support the proposition that the issuance of sanctions was a proper exercise of the presiding official's discretion. As this court reviews the decision of the MSPB, we of course are not bound by its decisions. Moreover, the facts of the *Abbot* case are different from the facts before us as more issues were involved than just the denial of a hearing on the competitive level issue.

that the agency was defending simultaneously and that the interest of controlling the docket was extremely important where a large number of appeals were pending simultaneously. The government goes on to state that once the agency had established the bona fides of the RIF it was not unreasonable to require that petitioner supply specifics as to her procedural allegations. Citing *Royal Indemnity Co. v. United States*, 371 F.2d 462 (Ct.Cl.1967), the government then states: "Analogously, the Court of Claims long held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment."

However, as stated in the beginning of this opinion, the Board does not have the power to grant summary judgment. Although we agree that the presiding official has an interest in the orderly administration of her docket, we do not agree that this entitles her to act in contravention of the law and deny petitioner the hearing she is legally entitled to receive. We, therefore, vacate the presiding official's determination that petitioner's competitive level was properly established and remand this case to the Board for a full hearing on the merits of this issue.

VACATED and REMANDED.