CERTAIN FORMER CSA EMPLOYEES, Petitioners,

v.

DEPARTMENT OF HEALTH & HUMAN SERVICES, Respondent.

Misc. No. 42.
Appeal No. 85–501.

United States Court of Appeals, Federal Circuit.

May 20, 1985.

---

Phillip R. Kete, Washington, D.C., argued, for petitioner. With him on brief was Daniel M. Schember, Gaffney, Anspach, Schember, Klimaski & Marks, P.C., Washington, D.C.

Mary Mitchelson, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With her on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Washington, D.C.; Sandra Shapiro, Deputy Asst. Gen. Counsel, Washington, D.C., Daniel Edelman, Dept. of Health & Human Services, Washington, D.C., of counsel.

Before FRIEDMAN, KASHIWA and NEWMAN, Circuit Judges.

FRIEDMAN, Circuit Judge.

These appeals and a petition for mandamus raise various questions concerning the removal from the Community Services Administration of all of its employees in a reduction-in-force resulting from the abolition of that agency and the transfer of some of its functions and employees to a new agency, the Office of Community Services. The Merit Systems Protection Board (Board) upheld the removal but gave the individual employees the opportunity to show that they were entitled to occupy the positions at the new agency instead of other former Community Services Administration employees who had been appointed to those positions. 21 M.S.P.R. 379 (1984). We affirm the Board, and deny the petition for mandamus.

I

For many years the Community Services Administration administered the grants under the anti-poverty program that the federal government made to community action agencies in the states. The Community Services Administration made the grants directly to those agencies and closely controlled and supervised both the making of the grants and the agencies' spending of the money. It did this to insure compliance with detailed federal standards governing the grants. The Community Services Administration was an independent agency, which in September 1981 had more than 900 employees.

In August 1981, in the Omnibus Budget Reconciliation Act of 1981 (Budget Reconciliation Act), Pub.L. No. 97–35, 95 Stat. 357 (1981), Congress made a major change in the federal antipoverty program. In place of the prior practice under which the federal government selected the grant recipients and closely supervised their compliance with detailed federally prescribed standards, Congress provided that beginning October 1, 1981, federal anti-poverty funds would be distributed through block grants to the states. The states would determine the basis upon and the agencies to which those funds would be distributed

and would be responsible for supervising the proper implementation of the grants. Apart from making the grants to the states, federal involvement in the program would be minimal.

The Budget Reconciliation Act terminated all funding of the Community Services Administration as of September 30, 1981. The Act created a new agency in the Department of Health and Human Services (the Department), the Office of Community Services. This new agency would handle the anti-poverty program on the block-grant basis and also would perform certain functions of the Community Services Administration that would be continued during a transitional period. In describing these arrangements, the Conference Committee Report on the Budget Reconciliation Act stated:

> The conferees emphasize that the Community Services Administration, as an agency, is terminated and that the Community Services Block Grant is clearly a new program within the Department of Health and Human Services, not a transfer of authority.

H.R.Con.Rep. No. 208, 97th Cong., 1st Sess. 653, 767–768, *reprinted in* 1981 U.S. Code Cong. & Ad.News 396, 1010, 1129.

The President signed the Budget Reconciliation Act on August 13, 1981. Two weeks earlier the Director of the Community Services Administration had distributed to all employees at the agency a general reduction-in-force notice, which stated that the President had requested no funding for the agency for the next fiscal year beginning October 1, 1981, that the agency might terminate, and that the employees' jobs might end on September 30, 1981. The notice included general information about reductions-in-force.

On August 21, 1981, the Community Services Administration sent specific reduction-in-force notices to all employees. The notice stated that because the agency had received no funding for the next fiscal year, all positions there were abolished, that no positions were available for reassignment, and that the employees would be separated as of September 30, 1981. On the latter date:

(1) All Community Services Administration employees, other than those who had resigned in the last two days (to protect their severance pay), were separated pursuant to the reduction-in-force;

(2) The Office of Community Services was established as an operating division in the Department. The Department determined that the new office would need 165 employees during its first year of operation to handle the functions that would be transferred to it.

On September 12, 1981, a union representing Community Services Administration employees filed a suit in the United States District Court for the District of Columbia to require the Department to fill the positions in the Office of Community Services with employees of the Community Services Administration. The union contended that all the functions of the old agency would be transferred to the new agency and that under the statute governing the rights of employees of an agency, functions of which were transferred to another agency, 5 U.S.C. § 3503 (discussed *infra*, p. 982), the employees of the old agency were entitled to transfer to the new agency. The district court entered a temporary restraining order on September 22, 1981, and a preliminary injunction on October 13, 1981. *National Council of CSA Locals, American Federation of Government Employees (AFGE) AFL–CIO v. Schweiker*, 526 F.Supp. 861 (D.D.C.1981).

The court held that "Congress has not exempted the transfer of anti-poverty programs from the Community Services Administration to the Department of Health and Human Services … from the coverage of" 5 U.S.C. § 3503, and that the Secretary therefore "must select any employees pursuant to the preferences accorded under" the latter statute. It permanently enjoined the Secretary "from selecting employees to administer the former Community Services Administration programs without giving preferences as required by" section 3503. *Id.* at 866. The court further held that the

determination "whether there has been a transfer of functions from CSA to HHS and/or a transfer of functions of former CSA employees to HHS" should be made in the first instance by the Secretary, subject to review by the Board. *Id.* at 864.

The Secretary determined that four functions had been transferred from the Community Services Administration to the Office of Community Services: The close-out of the Community Services Administration operations, the work of the Inspector General, certain discretionary programs, and the loan fund activities. The Secretary "further determined that [the] block grant and transition activities were new programs of OCS, and, therefore, with respect to those activities no transfer occurred." (Stipulation No. 23.)

The Secretary also determined that "all former [Community Services Administration] employees were identified" with the transferred functions.

The Department filled the 165 positions in the Office of Community Services covering the functions the Community Services Administration had performed in the following manner:

Because of the inadequate job descriptions and other defects in the records of the Community Services Administration and the dispersal of the employees of that agency, the Department could not reconstruct exact reduction-in-force priority registers for the Community Services Administration employees or determine the exact priorities among those employees for the new positions in the Office of Community Services. It therefore established master retention lists that ranked each permanent Community Services Administration employee according to veterans preference rights and dates of service. Separate lists were made for different types of appointments (competitive or excepted service) and competitive areas (headquarters and each regional office).

The Department then offered permanent appointments for each position in the Office of Community Services that was associated with a transferred function. The offers were made to those employees who had the highest retention standing on the master list. Employees who accepted the offers were treated as restored to duty as of October 1, 1981, and were given backpay from that date. Employees who rejected the offer or who did not receive any offer because of their lower position on the master retention list were placed upon the Department's reemployment priority list.

Employees of the Community Services Administration who had not been selected under this procedure appealed their September 30, 1981 dismissals to the Board. They contended that because the Community Services Administration had not complied with 5 U.S.C. § 3503 and the implementing regulations, 5 C.F.R. §§ 351.301–03 (1982), the entire reduction-in-force was invalid; that under that statute each of them should have been transferred to the Office of Community Services when the Community Services Administration was abolished on September 30, 1981; and that they were entitled to reinstatement with backpay to positions with the Office of Community Services, which they could hold until the latter agency terminated them pursuant to a proper reduction-in-force.

Several of these employees moved the Board, under 5 C.F.R. § 1201.27 (1982), to hear the appeals as a class action or, alternatively, to consolidate their appeals with those of the other former employees. The Board refused to hear the appeals as a class action, but granted a limited consolidation to determine those "common issues of law and fact which [were] national in scope." It referred the appeals to its chief administrative law judge for an initial decision on those issues.

After a hearing, the administrative law judge held that all former employees had transfer rights because all the functions of the Community Services Administration, including the transition and block grant functions, had been transferred to the Office of Community Services or, alternatively, because the latter had replaced the former in performing those functions. He also determined that the Department did not use

either of the prescribed methods for identifying competing employees with a transferring function, as 5 C.F.R. § 351.303(c) and (d) (1984) require, and that as a result the Department "did not accord the appellants their substantive rights when it effected the reduction in force." The judge concluded, however, that "[s]ince it is virtually impossible in this case to reconstruct a properly administered reduction in force on a retroactive basis for the purpose of ascertaining the relative retention standing of [the] employees, ... the Board should ratify the ... RIF procedure" the Department actually used.

The Board granted review and modified the decision. Although the Board agreed that the transition function had been transferred, it held that there was "insufficient credible evidence to support" the conclusion "that the 'block grant' function [was] transferred." The Board further ruled that "the ALJ erred in his alternative finding that the employees were entitled to transfer of function rights under 5 U.S.C. § 3503(b)."

The Board noted that "[t]here is no dispute that upon invoking the transfer of function procedures, the agency failed to utilize either of the permissible methods of identification." "Accordingly," the Board concluded, "the agency was remiss in meeting the responsibilities and obligations imposed by the regulations."

The Board determined, however, that this defect in the proceedings "does not warrant unconditional reversal of the entire reduction in force." Instead, the Board remanded the case for further hearing to enable each employee "to assert that he was identified with a continuing function," and "identify a position ... assigned to [an]other employe[e] with less retention standing or ... occupied by [an] employ[ee] who had no initial entitlement to transfer." "Should an [employee] present evidence that tends to establish that he was denied retention to which he was otherwise entitled ... and the agency is unable or unwilling to refute such evidence by showing it to be untrue or that his retention standing

would not have provided such benefit, the [employee] would prevail."

Subsequently, the Board decided appeals by other former Community Services Administration employees who were not parties to the consolidated cases. In those cases the Board essentially reiterated its decision in the consolidated cases.

## II

In No. 42 Misc., the petitioners challenge the decision of the Board on the "common issues of law and fact" described above. The government has moved to dismiss this appeal. It contends that since the Board remanded the case to permit each discharged employee to show that he had a higher retention right to a position in the Office of Community Services than the former Community Services Administration employee selected for the position had, there is no "final order or final decision" of the Board that we have jurisdiction to review under 28 U.S.C. § 1295(a)(9) (1982).

At least one of the petitioners, however, Ms. Wilkerson, has "abandoned any claim to relief under standards announced by the Board's order," choosing "instead to stand solely on dispositive claims common to all CSA employees." The Board's decision is therefore final as to her, and we clearly have jurisdiction to review it. At oral argument, the government conceded that we could resolve all the questions presented in No. 42 Misc., in Ms. Wilkerson's appeal. In these circumstances there is no occasion to determine whether, in the absence of that appeal, we would have jurisdiction to review the Board's decision at this stage of the case.

## III

Section 3503 of Title 5 of the United States Code (1982) provides:

(a) When a function is transferred from one agency to another, each competing employee in the function shall be transferred to the receiving agency for employment in a position for which he is qualified before the receiving agency

may make an appointment from another source to that position.

(b) When one agency is replaced by another, each competing employee in the agency to be replaced shall be transferred to the replacing agency for employment in a position for which he is qualified before the replacing agency may make an appointment from another source to that position.

Subsection (a) thus requires that, when there has been a transfer of function from one agency to another, an employee of the transferring agency shall be transferred to the receiving agency for employment "in a position for which he is qualified" before the receiving agency appoints a person not from the transferring agency to that position.

An implementing regulation provides:

(a) Before a reduction in force is made in connection with the transfer of any or all of the functions of a competitive area to another continuing competitive area, each competing employee in a position identified with the transferring function or functions shall be transferred to the continuing competitive area without any change in the tenure of his or her employment.

5 C.F.R. § 351.302(a) (1982).

In this case, the Board found that the block grant function was a new function and therefore had not been transferred from the Community Services Administration to the Office of Community Services, but that the other functions of the former agency had been so transferred. That finding is supported by substantial evidence, and we have no basis to disturb it.

The Department conceded, both in the administrative proceedings and before this court, that all the Community Services Administration employees were "identified" with the functions that were transferred from that agency to the Office of Community Services. In the light of that concession, section 3503(a) required the Department to offer Community Services Administration employees positions in the Office of Community Services for which they were qualified before hiring anyone else for those positions.

The Department did not do so initially, since it took the position that because the Community Services Administration was being abolished, its employees had no reassignment rights. Following the district court's decision in the *Schweiker* case (*supra*, p. 980), however, the Department corrected its error. It filled all of the jobs in the Office of Community Services associated with the transferred functions with former employees of the Community Services Administration, made the appointments of those employees effective as of October 1, 1981, and gave the employees backpay to that date. The result of this action was retroactively to give the reemployed Community Services Administration employees all the rights they had under section 3503(a).

The Board recognized that at the time of the termination of the Community Services Administration and the establishment of the Office of Community Services—which the Department treated as a reduction-in-force—the Department had not followed the governing reduction-in-force procedures. The Board, however, refused to "invalidate the entire reduction in force." It ruled:

Where, as in this case, the ultimate question for resolution relates to the retention of substantially fewer employees than were necessary prior to the transfer, the agency's noncompliance with certain provisions of part 351 does not warrant unconditional reversal of the entire reduction in force since many of those employees would have been subjected to separation from the federal service in any event.

The Board remanded the case to determine "[t]he effects of this agency error as it relates to each [petitioner]." In these proceedings, each petitioner could present "evidence that tends to establish that he was denied retention to which he was otherwise entitled," and to "identify a position or positions for which he was qualified that

have been assigned to other employees with less retention standing or positions occupied by employees who had no initial entitlement to transfer."

In challenging this ruling, the petitioners contend that "an illegal separation is null and void," that each employee therefore "must be treated for pay purposes as if the separation had not occurred, subject, of course, to any valid subsequent separation action," and that each is now entitled to reinstatement with backpay. Alternatively, they contend that reversal is required "because the government failed to create and maintain the records needed to calculate the hypothetical reduction in force."

In arguing that all of them are entitled to reinstatement with backpay, the petitioners rely primarily upon *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). There the government had dismissed Vitarelli as a security risk. The Court set aside the dismissal as "illegal and of no effect," *id.* at 545, 79 S.Ct. at 975, because the proceedings by which it had been effected violated the governing regulations. It concluded: "It follows from what we have said that petitioner is entitled to the reinstatement which he seeks, subject, of course to any lawful exercise of the Secretary's authority hereafter to dismiss him from employment in the Department of the Interior." *Id.* at 546, 79 S.Ct. at 976.

The present case is far removed from *Vitarelli*. There only a single employee was involved, the Court held that he had been improperly discharged from his position, and it ordered him reinstated to the position he had occupied. The present case, in contrast, involved a reduction-in-force in which more than 900 employees sought reinstatement with a new agency that had only 165 positions to fill. There was no way in which the Office of Community Services could have hired all the former employees of the Community Services Administration. Only a relatively small percentage of the Community Services Administration employees were entitled to employment at the Office of Community Ser-

vices. All or most of the employees so entitled, in fact, may have been hired. We decline to extend the principle applied in *Vitarelli* (and in the other similar cases upon which the petitioners rely) to the wholly different factual situation here.

In selecting the 165 employees to fill the positions at the Office of Community Services, the Department relied upon master lists establishing priority retention rankings for all the former Community Services Administration employees. *Supra*, p. 981. Those lists did not satisfy the requirements of traditional reduction-in-force registers, since they did not show the competitive levels of each employee, 5 C.F.R. § 351.403 (1984), and there were no separate retention registers for each competitive level, 5 C.F.R. § 351.404 (1984).

Accordingly, there may have been some former Community Services Administration employees who were not given jobs with the Office of Community Services to which they would have been entitled if the Community Services Administration had conducted a proper reduction-in-force.

The remand procedure that the Board adopted in this case was designed to enable individual employees who are in that situation to obtain the jobs they should have obtained. As noted, under the procedure, individual former Community Services Administration employees will be given the opportunity to show that there was a position in the new agency "assigned to [an]other [former Community Services Administration] employee[ ] with less retention standing or . . . occupied by [an] employee[ ] who had no initial entitlement to transfer." If an employee makes such a showing, the burden then will shift to the Department to refute that showing. If the Department cannot do so, the employee will be entitled to that position. Since it is conceded by all parties before us that all Community Services Administration employees were identified with functions that were transferred, the only issue on the remand will be the relative retention priorities of the employee claiming the particular position and the employee appointed to it.

In directing this procedure, the Board rejected the Department's contention that the retention rights of individual employees who had not been appointed to positions with the Office of Community Services could not be determined. It stated:

We specifically reject the agency's contention that it is impossible to determine identification of the employee because of inaccurate position descriptions. There is ample evidence available in the file concerning the organization and functional activities of CSA. In addition, we note that many of the positions within CSA were identical and located in the same organization.

Although the petitioners challenge the factual basis for these findings, we conclude that they are supported by substantial evidence. Ms. Olivari, a department classification specialist, was the only witness who had reviewed the Community Services Administration records. She found that they were sufficient to make a "functional comparison" of the position descriptions to determine what functions of the Community Services Administration had been transferred to the Office of Community Services. Ms. Olivari also testified that the necessary information could be obtained through a procedure known as a "desk audit," and that one could "conduct a regular desk audit after an agency has been abolished."

The petitioners contend, however, that because the government was at fault in not having proper reduction-in-force registers for the Community Services Administration employees, the Board was precluded from adopting the remedy it selected, on the ground that the government should not be permitted to profit from its own wrongdoing. There is no issue here about the government's "profiting" from the failure to maintain proper records. As we have held, only a relatively small number of Community Services Administration employees were entitled to employment at the Office of Community Services (165 out of 900).

We conclude that the Board has devised an appropriate procedure to determine whether any of the employees of the former agency who were not employed at the latter agency should have been so employed because of their retention priorities. We also have upheld, *supra*, p. 985, as supported by substantial evidence, the Board's finding that the retention priorities of Community Services Administration employees who were not transferred can now be determined. These conclusions answer and require rejection of the petitioners' argument based on the government's fault in not providing reduction-in-force registers for the Community Services Agency employees.

In evaluating the Department's and the Board's treatment of this case, it is essential to recognize that this was not a typical reduction-in-force situation. Normally, reductions-in-force result from a decrease in the agency's available funds, a change in the agency's workload, or a transfer to another agency of a portion of an agency's work. The present case, however, resulted from the elimination of an entire agency in connection with a significant change in the program that agency had administered, and the creation of a new agency to handle under a different program some of the work the old agency did.

The Board's handling of this case constituted a reasonable method of dealing with perhaps a unique and certainly most unusual situation. In our opinion, it was one that fairly and appropriately adjusted and accommodated the competing and substantially conflicting interests of the employees and the government.

IV

The petitioners also challenge the Board's refusal to treat their appeal as a class action on behalf of all former Community Services Administration employees who were not employed at the Office of Community Services.

The standard for determining whether an appeal to the Board will be

heard as a class action is set forth in 5 C.F.R. § 1201.27(a) (1984):

> The presiding official shall hear the case as a class action if he/she finds a class action will be the most efficient and fair way to adjudicate the appeal and will adequately protect the interests of all parties.

The decision whether to grant class action status is largely committed to the Board's discretion. *Cf. Adashunas v. Negley*, 626 F.2d 600 (7th Cir.1980) ("The standard of review of the denial of class certification [by a district court] is whether the court abused its discretion."). We cannot say the Board abused its discretion here in denying class action status.

■ In refusing class action status, the Board concluded that the limited consolidation it ordered—"only for the purposes of consideration of the common issues of law and fact which are national in scope"— would be "the most expeditious, equitable, and administratively efficient procedure." It stated:

> We believe that such consolidation will meet the concerns of all parties, and will result in a more manageable proceeding than would a combined class action and consolidated proceeding. Moreover, this procedure will assure the preservation of individual rights with respect to those issues which are not common, and complete individual appellate records in the event of judicial review.

The petitioners have not given any convincing reason why the Board's ruling was unwarranted. Indeed, in view of our decision on the merits of the case, it is difficult to see how the petitioners have been prejudiced by the Board's failure to convert their individual appeals into a class action. Even if the Board had provided for class action treatment in deciding the common issues, it still would have been necessary under the Board's decision to remand the case for separate hearings with respect to the individual petitioners.

The Board noted that "[t]he main concern expressed by those requesting a class action is that many former employees have not filed appeals to the Board, in reliance on either the class action petition or" the district court's order in *Schweiker*. It "recognize[d] that former CSA employees could justifiably have delayed the filing of their appeals in reliance on [the district court's] Order, which stated that any former CSA employee who was dissatis[fied] with the HHS determination regarding functions transferred from CSA would have a right of appeal to the Board." It stated:

> In light of the foregoing circumstances, it is reasonable to assume that many former CSA employees are awaiting notification from HHS, and are unaware of the fact that the filing period for their appeals has expired. Therefore, HHS is hereby ORDERED to notify all former CSA employees of their precise status within 15 days of the receipt of this Order, and to advise all such employees that they may appeal the HHS determination to the appropriate regional offices of the Board no later than 20 days after their receipt of the HHS notification.

The petitioners contend that the notice the Department sent in response to this directive was inadequate because it did not inform the employees that they had been dismissed under the procedures the Department followed in response to the order of the district court. At the present stage of this case, however, any question concerning the adequacy of the notice to inform the former Community Services Administration employees of their right to appeal to the Board is premature. That is an abstract question, since we cannot tell whether in fact any employees refrained from taking an appeal in response to a notice that on its face seems adequate to inform the employees of their rights.

## V

■ The petitioners urge us to issue a writ of mandamus to require the Board to order their reinstatement with backpay to positions at the Office of Community Services. The reasons that have led us to affirm the Board also require denial of the

petition for mandamus, which is not a substitute for appeal. *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943).

## CONCLUSION

The decision and order of the Merit Systems Protection Board is affirmed. The petition for a writ of mandamus is denied.

AFFIRMED and MANDAMUS DENIED.