Raymond C. AHLBERG, et al., Petitioners,

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

Appeal Nos. 86–881, 86–882, 86–892, 86–895, 86–943 and 86–945 to 86–947.

United States Court of Appeals, Federal Circuit.

Nov. 13, 1986.

Phillip R. Kete, Washington, D.C., for petitioners.

Linda T. Maramba, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson. Daniel J. Edelman and Marge McAuliffe, Business and Administrative Law Div., Dept. of Health and Human Services, Washington, D.C., of counsel.

Before FRIEDMAN, Circuit Judge, COWEN, Senior Circuit Judge, and NIES, Circuit Judge.

FRIEDMAN, Circuit Judge.

This case follows in the wake of our decisions in *Certain Former CSA Employees v. Department of Health and Human Services,* 762 F.2d 978 (Fed.Cir.1985) (*Former CSA Employees*), and *Menoken v. Department of Health and Human Services,* 784 F.2d 365 (Fed.Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 273, 93 L.Ed.2d 249 (1986). In *Former CSA Employees,* we affirmed the decision of the Merit Systems Protection Board (Board) that (1) upheld a reduction in force resulting from the abolition of the Community Services Administration and the transfer of some of that agency's functions and employees to a new agency, the Office of Community Services (new agency), and (2) remanded the case to give former employees of the Community Services Administration the opportunity to show that they had greater rights to positions in the new agency than the employees who had been transferred to those positions. In *Menoken* we approved the Board's use of a master retention list to determine whether a particular former Community Services Administration employee was entitled to displace another such employee who had been transferred to the new agency.

In the present case, the Board held that the rights of the 28 petitioners, former Community Services Administration employees who had not been transferred to the new agency, had not been violated in the reduction in force. We affirm.

I

A. The background facts involved in this appeal are detailed in *Former CSA Employees* and summarized again in *Menoken*, and thus need not be repeated here. Briefly, the facts involved in this appeal are as follows:

The Community Services Administration, which administered the grants under the federal antipoverty programs made to State community agencies, was abolished on September 30, 1981. A new agency, the Office of Community Services, was established in the Department of Health and Human Services (Department). In *Former CSA Employees*, we upheld the Board's findings that, with one exception not here relevant, all the functions of the Community Services Administration had been transferred to the new agency, and we recognized that the Department had conceded that "all the Community Services Administration employees were 'identified' with" the transferred functions. 762 F.2d at 983.

When it was abolished, the Community Services Administration had more than 900 employees. The new agency, which had only 165 employees to perform the transferred functions, filled those positions with former Community Services Administration employees. Because the Community Services Administration had not maintained adequate personnel records, the Department "could not reconstruct exact reduction-in-force priority registers for the Community Services Administration employees or determine the exact priorities among those employees for the new positions in the Office of Community Services." *Id.* at 981. Therefore, the Department created preference order master lists to determine which of the 900 former employees should be offered the 165 vacant positions in the new agency.

On the appeal of former Community Services Administration employees who had not been selected for positions in the new agency under this procedure, the Board held that although the Department had not followed traditional reduction-in-force procedures, it was not necessary to invalidate the entire reduction in force. According to the Board:

> Where, as in this case, the ultimate question for resolution relates to the retention of substantially fewer employees than were necessary prior to the transfer, the agency's noncompliance with certain provisions of part 351 does not warrant unconditional reversal of the entire reduction in force since many of those employees would have been subjected to separation from the Federal Service in any event.

*Certain Former CSA Employees v. Department of Health and Human Services*, 21 M.S.P.R. 379, 393 (1984), *aff'd*, *Certain Former CSA Employees v. Department of Health and Human Services*, 762 F.2d 978 (Fed.Cir.1985).

The Board remanded the individual appeals to its regional offices for proceedings to determine whether any non-transferred employee was entitled to retention. The Board ordered that, in these remand proceedings, each former Community Services Administration employee should assert that he was identified with a function that was transferred from the Community Services Administration to the new agency and then should "identify a position or positions for which he was qualified that have been assigned to other employees with less retention standing or positions occupied by employees who had no initial entitlement to transfer." *Id.* In affirming the Board's decision, we concluded that the "Board has devised an appropriate procedure to determine whether any of the employees of the former agency who were not employed at the latter agency should have been so employed because of their retention priorities." *Former CSA Employees*, 762 F.2d at 985.

*Menoken* was the first appeal to this court from the Board's remand proceedings to determine individual entitlement to positions at the new agency. In *Menoken*, 784 F.2d at 369–370, we approved the Board's use of the master retention lists to determine whether a particular former Community Services Administration employee was

entitled to displace another such employee who had been transferred to the new agency.

B. This case involves two groups of petitioners: those formerly employed in the Community Services Administration offices in (1) Boston and (2) Atlanta and Kansas City. Since the facts and legal issues involving the two groups are different, we discuss each group separately.

## II The Boston Petitioners

A. In our decision in *Former CSA Employees*, 762 F.2d at 984, we held that the only issue on remand before the Board should be the relative retention priorities of the employee claiming a particular position at the new agency and the employee appointed to this position. Moreover, we held that the burden rested upon the petitioners initially "to show that there was a position in the new agency 'assigned to [an]other [former Community Services Administration employee] with less retention standing ... or no initial entitlement to transfer.'" *Id.*

In accordance with the Board's directive in *Former CSA Employees*, the Boston presiding official, in an August 14, 1984 order, directed each petitioner to provide a submission indicating:

[t]hat he was identified with a continuing function transferred to the Office of Community Services (OCS) [new agency] and ... further identify[ing] a position or positions for which he was qualified that have been assigned to other employees with less retention standing or positions occupied by employees who had [no] initial entitlement to transfer.

Moreover, the presiding official cautioned the petitioners that:

Absent such assertions, an appeal will be dismissed for failure to prosecute.... Where an appellant fails to provide the requested information, the record will close on September 14, 1984 and his appeal will be dismissed with prejudice.

No submissions were made. Almost a year later, in a second order, dated July 22, 1985, the Boston presiding official directed the petitioners to file a full and complete response to the August 14, 1984 order, and admonished them that failure to file an adequate response would result in dismissal of their appeal with prejudice.

Despite the two orders, most of the Boston petitioners (the Ahlberg petitioners) filed no response. The presiding official dismissed their appeals for failure to prosecute, stating:

[E]ach appellant was given notice that the burden in this case had shifted to them to come forward with allegations of sufficient specificity to enable the agency to address the contested matters in its presentation of evidence and that failure to meet this burden would result in dismissal with prejudice for failure to prosecute.

The record reflects that none of the appellants ... provided the information requested in the July 22, 1985 order and did not respond to this order in any way. Consequently, I find that these appellants have failed to meet their burden of presenting specific exceptions to the agency's actions and have failed to prosecute their appeals. Accordingly, I must dismiss their appeals with prejudice. (footnote omitted).

The three other Boston petitioners (the Janey petitioners) filed responses. Betty Kaufman, who held a GS–14 position at the Community Services Administration, claimed entitlement to attorney-examiner positions which were classified at the GS–15 level. Kenneth Janey and Hamed Negron, who both held GS–12 positions at the Community Services Administration, claimed entitlement to an outplacement coordinator position which was classified at the GS–15 level.

The presiding official held that these three petitioners had not identified positions at the new agency for which they were qualified, since an employee is not entitled to a promotion as a result of a reduction in force. *Menoken*, 384 F.2d at 368.

Janey also claimed entitlement to a secretarial position at the new agency. The

minimum qualification for this position was the ability to type 40 words per minute, and Janey could type only 20 words per minute. Because Janey was not qualified for the secretarial position, the presiding official found that he had failed to identify a position at the new agency for which he was qualified.

In a detailed order, the presiding official concluded that the responses of the Janey petitioners were inadequate to show entitlement to a position at the new agency. He further stated that if any of the information relating to the Janey petitioners was inaccurate and if any petitioner could "still assert facts sufficient to show entitlement to a position, then a hearing may still be warranted," and that each petitioner could file a response. The Janey petitioners filed a short response. The presiding official dismissed their appeal in an opinion that discussed their submissions, which he found insufficient to establish entitlement.

B. The sole ground upon which the Boston petitioners challenge the Board's decision is that they were improperly denied a hearing on the question whether they were entitled to a position in the new agency. They argue that under 5 U.S.C. § 7701(a)(1) (1982), which provides that in an appeal to the Board the appellant "shall have the right—(1) to a hearing for which a transcript will be kept," and this court's decision in *Crispin v. Department of Commerce*, 732 F.2d 919 (Fed.Cir.1984), they were entitled to a hearing without regard to what evidence they proposed to introduce.

■ In the special circumstances of this case, however, in which the individual proceedings were conducted pursuant to the Board's specific direction in its remand order, we conclude that the presiding official properly denied a hearing because the Boston petitioners failed to show any possible entitlement to a position at the new agency. That, of course, was the issue upon which the Board in *Former CSA Employees* directed the individual remand proceedings.

1. As noted, the Board there directed that in the remand proceedings, each for-

mer employee was required to "identify a position or positions for which he was qualified that have been assigned to other employees with less retention standing or positions occupied by employees who had no initial entitlement to transfer." We approved that standard in our *Former CSA Employees* decision. The order of the presiding official tracked this language and also repeated the additional requirement the Board specified in *Former CSA Employees* that the employee show that he was identified with a continuing function that was transferred to the new agency (a requirement we discuss in part II B 2 below).

Since the presiding official was faced with the likelihood of holding a substantial number of individual hearings, it was appropriate and reasonable for him to require the individual petitioners to make a threshold showing that they had a colorable claim under the standards of *Former CSA Employees*. That was all his order required them to do.

The presiding official twice warned the Boston petitioners that if they failed to file a submission containing such a *prima facie* showing of entitlement, their cases would be dismissed for nonprosecution. When the Ahlberg petitioners failed to file any response, the presiding official dismissed their cases. That action was justified and proper.

As we have recognized (*Crispin*, 732 F.2d at 922–23), a Board regulation explicitly authorizes the presiding official to dismiss an appeal for failure to prosecute. 5 C.F.R. § 1201.43(b) (1985) provides:

If a party fails to prosecute or defend an appeal, the presiding official may dismiss the action with prejudice or rule for the appellant.

The presiding official correctly treated the Ahlberg petitioners' failure to make any submission, after twice being told to do so, as a failure to prosecute their appeal, as he had warned them he would do. The regulation explicitly authorized him to dismiss the cases for such failure. The regu-

lation also shows that, contrary to the petitioners' contention, an employee does not have an absolute right to a hearing before the Board under 5 U.S.C. § 7701(a)(1) without regard to the employee's actions before the Board.

The Ahlberg petitioners' failure to make the submissions the presiding official required also may be viewed as a waiver of any right they may have had to a hearing. An employee may waive his right to a hearing under 5 U.S.C. § 7701(a)(1). *See, e.g., Manning v. Merit Systems Protection Board,* 742 F.2d 1424, 1427–28 (Fed.Cir. 1984) (evidentiary hearing before the Board on jurisdictional issues is not required where an employee submits no evidence in response to the agency's documentary evidence); *Hulett v. Department of Navy,* 27 M.S.P.R. 510, 512 (1985) (right to hearing waived where an employee twice indicated that he declined a hearing despite notice that failure to make a timely request for a hearing would result in a waiver of right to hearing); *Brown v. Department of Navy,* 21 M.S.P.R. 204, 205–06 (1984) (employee's failure to act timely to preserve his statutory hearing right constituted an implied waiver of that right).

Here the petitioners were on notice that failure to make the required submissions would result in the closing of the record and dismissing of the appeal. When, despite such notice, the petitioners failed to make any submissions, implicitly they waived any right they may have had to a hearing.

2. The Ahlberg petitioners contend that they were justified in disregarding the presiding official's orders to identify a position at the new agency to which they were entitled because they were improperly directed to make "futile" submissions. As noted previously, the submission was required to indicate that the former Community Services Administration employee was identified with a continuing function that was transferred to the new agency. According to the petitioners, such a submission would have been futile because in *Former CSA Employees,* 762 F.2d at 983, this court upheld the Board's findings that all of the functions of the Community Services Administration had been transferred to the new agency, and had held that the Department had conceded that "all the Community Services Administration employees were 'identified' with" the transferred functions.

Although we recognized in *Former CSA Employees,* 762 F.2d at 984, that all Community Services Administration employees were identified with functions that had been transferred to the new agency, we did not hold that all Community Services Administration functions were transferred to the new agency or that each Community Services employee was identified with every function that was transferred. Accordingly, it was proper for the presiding officer to require the petitioners to indicate the particular transferred positions with which they had been identified.

In any event, if this requirement was unnecessary, the petitioners' response could have so indicated. The alleged futility of this requirement could not and did not justify the petitioners' failure to comply with the other requirement that they identify a position in the new agency to which they had a greater entitlement than the incumbent. Indeed, the three Janey petitioners so recognized, since they made submissions that attempted to show entitlement to particular positions at the new agency. See part II B 3 below.

3. The presiding official also properly dismissed without a hearing the cases of the three Janey petitioners who made submissions, because their submissions failed to identify any positions in the new agency for which they were qualified.

All three of the Janey petitioners asserted they were qualified for positions at a higher grade than they had at the Community Services Administration. We held in *Menoken,* however, that an employee is not entitled to obtain a higher grade position through a reduction in force; we stated that "it would be anomalous if, as a result of a reduction in force, an employee who initially was removed could use flaws in the reduction in force to obtain a higher grade

than the one he had held." 784 F.2d at 368. To the extent the Janey petitioners were challenging the classifications of their old positions or the positions at the new agency to which they claimed entitlement, that was not a proper consideration in the Board's review of the reduction in force. *Id.* at 368–69.

One of the three Janey petitioners also claimed entitlement to a secretarial position at the new agency. A qualification for that position was the ability to type 40 words per minute. Janey failed to respond to the agency's evidence showing that the petitioner could type only 20 words per minute. Thus, the presiding official correctly concluded that that employee had not shown any possible basis for entitlement to that position.

4. Before this court the petitioners have never stated what evidence of their entitlement to positions at the new agency they would have introduced at a hearing that they could not have described in the submissions the presiding official directed them to make. Instead, in response to questions at oral argument, the petitioners' counsel indicated only that they wanted a hearing to introduce evidence that they would have been entitled to prevail if the new agency had proceeded by reconstructing traditional reduction-in-force registers rather than using the master lists. As we discuss in part III, the new agency was justified in using the master lists to determine the relative priority of the former Community Services Administration employees who were not transferred to the new agency and those who were. The conclusion thus is inescapable that the petitioners had no relevant evidence on the issues before the Board that they were precluded from bringing to the attention of the presiding official as a result of the lack of a hearing.

5. The petitioners contend that our decision in *Crispin, supra,* establishes that any employee who appeals from an adverse personnel action is entitled to an evidentiary hearing before the Board, without regard to the evidence he proposes to introduce at that hearing. *Crispin* does not have the sweeping reach that petitioners ascribe to it. To the contrary, the holding there that the Board erroneously denied Ms. Crispin a hearing turned upon the particular facts and cannot properly be extended to the significantly different circumstances in the present case.

Ms. Crispin was downgraded in a reassignment pursuant to an agency-wide reduction in force. In her appeal to the Board, she contended that her competitive level was improper. The presiding official ruled that the propriety of the competitive level was a question of law and directed the parties to file briefs on that issue. Ms. Crispin did so, and three days later requested a hearing on the issue. The presiding official denied without explanation the request for a hearing and upheld Ms. Crispin's reassignment, ruling that no error in the competitive levels had been shown.

This court held that the presiding official improperly had denied Ms. Crispin a hearing. It viewed the presiding official's action in doing so as, in essence, granting summary judgment for the government, and ruled that the Board cannot grant summary judgment. The court rejected the government's contention that the presiding official denied a hearing as a sanction for Ms. Crispin's refusal to respond to discovery or to her orders. Noting that Ms. Crispin "did not fail to comply with the presiding official's orders concerning the competitive level issue," 732 F.2d at 923, the court concluded that the presiding official had not imposed sanctions.

*Crispin* is distinguishable from the present case in a number of respects. First, the presiding official there was not implementing a prior Board decision that had explicitly specified the showing the individual employees were required to make in order to prevail, but was instead hearing an initial appeal from the agency action. Second, the court in *Crispin* held that the presiding official had not imposed sanctions. Here, however, we have held that the dismissal of the *Ahlberg* cases was a sanction for failure to make any response

to the presiding official's submission orders. Third, unlike Ms. Crispin, the Ahlberg petitioners did "fail to comply with the presiding official's orders." Fourth, Ms. Crispin specifically requested a hearing, which the presiding official denied without explanation. In the present case, in contrast, the presiding official indicated the reasons for his dismissal of the cases without a hearing. Fifth, the Boston petitioners were warned twice that their failure to satisfy the requirements of the presiding official's submission orders would result in the dismissal of their cases. In contrast, Ms. Crispin had never been told that, despite her request for a hearing on the competitive level issue, the presiding official would decide that issue on the basis of the briefs.

In sum, *Crispin* involved a quite different situation, and we decline to extend its holding to the present case.

### III   The Atlanta and Kansas City Petitioners

A. After hearings, the presiding officials found that none of the Atlanta or Kansas City petitioners had established that there were positions in the new agency for which they were qualified and for which they had higher retention rights than the employees who had been transferred to the identified positions. The presiding officials therefore upheld the removal of these petitioners pursuant to the reduction in force.

█ B.   The sole contention of these petitioners is that the Board was required to recreate standard reduction-in-force registers to determine their retention rights. According to these petitioners, the Board improperly used the master retention lists to determine individual entitlement to positions at the new agency.

We specifically rejected that contention in *Menoken*, which controls here. There we stated:

> Underlying much of the petitioner's argument is the contention that the Board was barred from any reliance upon the master retention lists in determining

whether a particular former Community Services Administration employee was entitled to displace another such employee who had been transferred to the new agency. . . .

Although neither the Board nor this court explicitly addressed the use of the master list, approval of that use was implicit in the decisions. Our decision noted that the master lists "establishing priority retention rankings for all the former Community Services Administration employees ... did not satisfy the requirements of traditional reduction-in-force registers...." 762 F.2d at 984. We nevertheless upheld the Board's handling of the case under the remand procedure it devised "to determine whether any of the employees of the former agency who were not employed at the latter agency should have been so employed because of their retention priorities" as "a reasonable method of dealing with perhaps a unique and certainly most unusual situation." *Id.* at 985.

In so holding, we did not intend to require the Board to reconstruct "traditional reduction-in-force registers." Instead, we intended to, and did, give the Board considerable discretion in determining the bases upon which it would ascertain whether particular former Community Services Administration employees had a higher right to a position in the new agency than the employee the new agency had appointed. We cannot say the Board abused its discretion in the method it used in deciding that question in this case adversely to the petitioner.

784 F.2d at 369–70.

In *Menoken*, we made clear that the Board could use the master retention lists on remand to determine individual entitlement to positions at the new agency. Contrary to the petitioners' contention, this statement was not dictum, but the basis for our disposition of the case. *Menoken* does not limit the Board's use of the master retention lists to exceptional situations, as the petitioners assert.

**1246**

The petitioners contend that *Menoken* was erroneously decided because it is inconsistent with *Former CSA Employees* and urge the panel to recommend that the court consider this case *in banc* to overrule *Menoken*. Contrary to the petitioners' contention, *Menoken* merely made explicit what was implicit in *Former CSA Employees,* and is fully consistent with it. Accordingly, we reject the petitioners' suggestion that the panel recommend that the court hear this case *in banc.*

### IV

The government contends that this appeal is frivolous, and requests that we assess attorney's fees and costs against the petitioners and their counsel. Although we have rejected the petitioners' contentions, we cannot say that those contentions are so insubstantial as to warrant the imposition of sanctions.

### CONCLUSION

The orders of the Board upholding the application of the reduction in force to the petitioners are affirmed.

AFFIRMED.