Nancy A. PETTIS, Petitioner,

v.

DEPARTMENT OF HEALTH & HUMAN SERVICES, Respondent.

Appeal No. 86–883.

United States Court of Appeals, Federal Circuit.

Oct. 22, 1986.

Alan Dockterman, of Holland & Dockterman, Alexandria, Va., argued for petitioner.

Jonathan Baker, of the Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director,

and Robert A. Reutershan, Asst. Director, of the Commercial Litigation Branch, Dept. of Justice, Washington, D.C. Of counsel was Daniel Edelman, of the Dept. of Health and Human Services.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and BENNETT, Senior Circuit Judge.

BENNETT, Senior Circuit Judge.

Petitioner Nancy A. Pettis (Pettis) appeals the final decision of the Merit Systems Protection Board (MSPB or board), sustaining the reduction-in-force action taken with respect to petitioner's separation for which she seeks reinstatement and back pay. We affirm.

## BACKGROUND

Effective October 1, 1981, Congress abolished the Community Services Administration (CSA) and transferred some of its former functions to a new agency, the Office of Community Services (OCS), within the Department of Health and Human Services (Department or HHS). At the time of the reduction in force (RIF), Pettis was employed at the CSA as a social science analyst at the GS-14 level. Since the CSA employed over 900 employees and the OCS had positions for only 165, and because CSA personnel records were inadequate, the HHS created preference order master lists (POML) under which, according to seniority, veteran's preference and skills, the former CSA employees with the highest POML retention standing were offered vacant permanent positions in the OCS for which they were qualified and eligible. Pettis received POML position No. 166 but did not receive a position during the RIF and was separated from federal service on September 30, 1981. Pettis appealed her separation, and after a hearing on the merits, the presiding official of the board sustained the separation by an initial decision on September 17, 1984. Once the official's decision became the board's final decision on October 22, 1984, Pettis made a timely appeal to this court.

Her appeal to this court was stayed during an appeal by 297 former CSA employees with common issues of law regarding the CSA reduction in force. In that case, *Certain Former CSA Employees v. Department of Health and Human Services*, 762 F.2d 978 (Fed.Cir.1985) (*Former CSA Employees*), this court affirmed the board's procedure for handling the reduction in force. Following that decision, which was adverse to petitioners, Ms. Pettis resumed her petition for individual review, claiming entitlement to some 50 temporary and permanent positions and citing the veteran's preference provisions and replacement provisions of 5 U.S.C. §§ 3502, 3503(a) (1982).

In its review, the board found that, since the block grant functions were a new and distinct function within the OCS, petitioner had no entitlement to block grant positions. Also, since no one is entitled to a promotion as the result of a reduction in force or even a transfer of functions, the board found that petitioner had no right to GS-15 or higher positions. *See Menoken v. Department of Health and Human Services*, 784 F.2d 365, 367 (Fed.Cir.1986). The board found that Ms. Pettis did not have superior entitlement rights (based on the POML) to the persons who received the available GS-14 positions. Finally, since Ms. Pettis turned down a telephone offer for a GS-13 program analyst position within the discretionary grants division during the summer of 1982, the board concluded that the petitioner was not entitled to another position at GS-13 or lower. Therefore, the board affirmed her separation from federal service.

## OPINION

In this appeal from the board's decision, Pettis claims that she had greater retention and assignment rights than persons who were given positions at GS-13 or below in the OCS, that the board's reliance on her refusal of the GS-13 position 9 months after her separation was erroneous, that she was denied the right to compete for Group III positions in her commuting area outside her competitive area, that she should have been transferred to HHS under 5 U.S.C. § 3503(b), and that her service

computation date is incorrect. She seeks reinstatement and back pay under 5 U.S.C. § 5596 (1982).

Petitioner does not challenge the board's findings that she was not entitled to GS–14 or higher positions as a result of the reduction in force. However, she does argue that her refusal of a GS–13 position in the summer of 1982 should have no bearing on whether she was entitled to such a transition position in October 1981, based on the POML during the reduction in force.

In support of its conclusion that Pettis was barred from consideration for GS–13 or lower positions as a result of her refusal of the offer, the board cited Federal Personnel Manual (FPM), chapter 351, subchapter 4–2(a) (July 7, 1981). That section provides, in pertinent part:

> If a Group I or II employee refuses an offer which is in accord with his or her rights the agency may separate or furlough him or her by reduction in force.*

In addition, as noted in the respondent's brief, FPM chapter 351.4–5(a)(4) goes on to provide, in relevant part:

> a. *General.*
>
> . . . .
>
> (4) When there are two or more positions with the highest available representative rate and one or more positions with lower representative rates, the agency offers one of the positions with the highest available rate.
>
> b. *Limits on assignment right.* An employee has no right to assignment to a position with a grade or representative rate higher than his or her own. An employee is entitled to only one proper offer. He or she is entitled to no further offer when he or she:
>
> —accepts an offer;
>
> —rejects an offer; or
>
> —fails to reply to an offer within a reasonable time.

See also *Etter v. Department of Defense,* 14 M.S.P.R. 367, 369 (1983) (in a reduction in force, an employee is entitled to one proper offer even if another position was available for which employee qualified); *Gayheart v. Department of the Army,* 12 M.S.P.R. 300 (1982) (fact that others got second offers in reduction-in-force action is insignificant since receipt of one offer satisfies assignment rights in a reduction-in-force action). Although the prior decisions of the Merit Systems Protection Board are not binding precedent for this court, the reasoning contained therein can be looked to, in proper situations, for helpful guidance.

If the reduction in force at issue had been an ordinary reduction in force and Pettis had received the reassignment offer for a GS–13 position in the OCS, the requirements cited above make it clear that her refusal of the position would end her entitlement to further offers, provided that a GS–13 position was the highest available to which she was entitled. But as this court recognized in *Former CSA Employees,* "it is essential to recognize that this was not a typical reduction-in-force situation." 762 F.2d at 985.

In *Former CSA Employees,* this court was faced with a challenge by 297 former CSA employees to the reduction-in-force procedures utilized by the Department. Because the Department had been unable to reconstruct exact reduction-in-force priority registers for the CSA employees,

> [i]t therefore established master retention lists that ranked each permanent [CSA] employee according to veterans preference rights and dates of service. . . .

The Department then offered permanent appointments for each position in the [OCS] that was associated with a transferred function. The offers were made to those employees who had the highest retention standing on the master list. Employees who accepted the offers were treated as restored to duty as of October 1, 1981, and were given backpay from that date. Employees who rejected the offer or who did not receive any offer because of their lower position on the master retention list were placed upon

---

* It is uncontested that Pettis was a Group I employee, i.e., a "career employee not serving a probationary period." 5 C.F.R. § 351.501(b)(1) (1986).

the Department's reemployment priority list.

762 F.2d at 981. Thus, despite finding that the Department had not followed the governing reduction-in-force procedures, the board had declined to invalidate the entire reduction-in-force procedure actually utilized.

We affirmed the board's reduction-in-force procedures, concluding that "the Board [had] devised an appropriate procedure to determine whether any of the employees of the former agency who were not employed at the latter agency should have been so employed because of their retention priorities." *Id.* at 985. The court recognized that the challenged reduction in force was the result of the unusual elimination of an entire agency in connection with a significant change in the program that agency had administered combined with the creation of a new agency to handle under a different program some of the old work that the prior agency did.

 Thus, while not a traditional reduction in force with traditional reduction-in-force registers in which all assignments were made prior to the affected employee's separation from government service, the procedure employed during the abolishment of CSA was a reduction in force nonetheless. The job offered to Pettis in the summer of 1982 was in the Division of Discretionary Grants in the OCS, a transferred function, and must be considered as having been made under her assignment rights, not her reemployment rights. If she had accepted the position, she would have been entitled to back pay from October 1, 1981. Thus, having concluded that the reduction in force was still ongoing at the time of the summer 1982 offer, traditional rules governing assignment rights support the Department's argument that her refusal of the offer barred further consideration for GS–13 or lower positions allocated during the reduction in force.

 An agency has wide discretion in conducting a reduction in force. *Gandola v. Federal Trade Commission*, 773 F.2d 308, 313 (Fed.Cir.1985). Ordinarily, this court will not disturb a reduction in force

absent a clear abuse of discretion or a substantial departure from applicable procedures. *Id.* Even in a case such as this, where the reduction in force is nontraditional and conducted under unique procedures, our review remains limited by statute. The board's decision must be affirmed unless it is found to be:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) obtained without procedures required by law, rule or regulation having been followed; or
>
> (3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (1982). *See also Hayes v. Department of the Navy*, 727 F.2d 1535 (Fed.Cir.1984).

As noted, this court has already approved the reduction-in-force procedures utilized in the present case. Petitioner has not alleged that she was misinformed about her rights under these procedures and cannot thus claim prejudice on this account. *Cf. Covington v. Department of Health & Human Services*, 750 F.2d 937 (Fed.Cir.1983) (CSA employee suffered prejudice when he retired on the basis of a misleading and erroneous notice). She does contend that the procedures as applied wrongfully deprived her of employment. However, her counsel asserted at oral argument on appeal that, at the time she turned down the job offer in 1982, Pettis did not wish to work for the government. Why she has pursued an inconsistent course of seeking reinstatement and back pay and refusing the very offer which would have given it to her is not clear. If she only desired back pay, as now alleged in her brief, she could have accepted the proffered position and then resigned. She did not do this. The court cannot correct her mistake retroactively. It is, for the foregoing reasons, unnecessary to address the petitioner's other contentions.

AFFIRMED.