Robert L. ACERNO, Dara L. Anderson, Lucille M. Watson, Vito M. Pizzi, Ethel G. Hudgins and Linda Pilgrim, Petitioners,

v.

DEPARTMENT OF HEALTH & HUMAN SERVICES, Respondent.

Appeal Nos. 86–932, 86–933, 86–935, 86–944 and 86–985.

United States Court of Appeals, Federal Circuit.

April 1, 1987.

Phillip R. Kete, Takoma Park, Md., argued for petitioners.

Jonathan Baker, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, and Mary Mitchelson, Asst. Director. Marge McAuliffe, Legal Asst., Office of General Counsel, Dept. of Health and Human Services, Washington, D.C., of counsel.

Before FRIEDMAN, NEWMAN and ARCHER, Circuit Judges.

FRIEDMAN, Circuit Judge.

These are five consolidated appeals from decisions of the Merit Systems Protection Board (Board) holding that the retention priority rights of the six petitioners were not violated when they were separated from their positions at the Community Services Administration through a reduction in force. We affirm the Board's decision sustaining the separation of petitioners Hudgins, Pilgrim, and Pizzi, but reverse and remand the decisions sustaining the separation of petitioners Acerno, Anderson, and Watson.

I

A. The background facts are detailed in *Certain Former CSA Employees v. Department of Health and Human Servs.,* 762 F.2d 978 (Fed Cir.1985) (*Former CSA Employees* ), and summarized again in *Menoken v. Department of Health and Human Servs.,* 784 F.2d 365 (Fed.Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 273, 93 L.Ed.2d 249 (1986) and *Ahlberg v. Department of Health and Human Servs.,* 804 F.2d 1238 (Fed.Cir.1986). Briefly, they are as follows:

The Community Services Administration, which administered the grants under the federal antipoverty programs made to state community agencies, was abolished as an independent agency on September 30, 1981. A new agency, the Office of Community Services, was established in the Department of Health and Human Services. In *Former CSA Employees,* we upheld the Board's findings that most of the functions of the Community Services Administration had been transferred to the new agency, and we recognized that "all the Community Services Administration employees were 'identified' with" the transferred functions. 762 F.2d at 983.

At the time it was abolished, the Community Services Administration had more than 900 employees. The new agency had only 165 employees to perform the transferred functions, and ultimately filled those positions with former Community Services Administration employees. Because the Community Services Administration had not maintained adequate personnel records, the government "could not reconstruct exact reduction-in-force priority registers for the Community Services Administration employees or determine the exact priorities among those employees for the new positions in the Office of Community Services." *Id.* at 981. Therefore, the Department created preference order master lists to determine which of the 900 former employees should be offered the 165 positions in the new agency.

On the appeal of former Community Services Administration employees who had not been selected for the new agency under this procedure, the Board held that although the Department had not followed traditional reduction-in-force procedures, it was not necessary to invalidate the entire

reduction in force. According to the Board:

> Where, as in this case, the ultimate question for resolution relates to the retention of substantially fewer employees than were necessary prior to the transfer, the agency's noncompliance with certain provisions of part 351 does not warrant unconditional reversal of the entire reduction in force since many of those employees would have been subjected to separation from the federal service in any event.

*Certain Former CSA Employees v. Department of Health and Human Servs.,* 21 M.S.P.R. 379, 393 (1984), *aff'd,* 762 F.2d 978 (Fed.Cir.1985).

The Board remanded the individual appeals to its regional offices for proceedings to determine whether any individual petitioner was entitled to retention. The Board ordered that, in these remand proceedings, each former Community Services Administration employee should show that he was identified with a function that was transferred from the Community Services Administration to the new agency and then should "identify a position or positions for which he was qualified that have been assigned to other employees with less retention standing or positions occupied by employees who had no initial entitlement to transfer." *Id.* In affirming the Board's decision, we concluded that the "Board has devised an appropriate procedure to determine whether any of the employees of the former agency who were not employed at the latter agency should have been so employed because of their retention priorities." *Former CSA Employees,* 762 F.2d at 985.

We pointed out that on remand the burden rested initially on the employee to show that there was a position at the new agency that had been assigned to another Administration employee with less retention standing or occupied by an employee with no initial entitlement to transfer. *Id.* at 984. If an employee made such a showing, the burden then would shift to the government "to refute that showing." *Id.* If the government could not do so, the employee would be entitled to the position claimed. We made clear that "the only issue on the remand [would] be the relative retention priorities of the employee claiming the particular position and the employee appointed to it." *Id.*

B. All of the petitioners in the present case are former Community Services Administration employees who were not offered positions at the new agency. The petitioners may be divided into three categories.

1. Petitioner Pizzi contends that he is entitled to a systems accountant position at the new agency now occupied by Mr. James Pagett. The presiding official rejected this contention, finding (1) that Mr. Pizzi had lower retention standing on the master retention list than Mr. Pagett, and (2) that Mr. Pizzi had failed to show that Mr. Pagett was not qualified for the position he occupied.

2. Petitioners Hudgins and Pilgrim claim that they are entitled to various clerical positions at the new agency. The presiding official found that the petitioners had waived their right to all of the positions they claimed by indicating that they would not accept temporary positions or positions below the GS–8 level.

3. Petitioners Acerno, Anderson, and Watson claimed two field representative positions at the new agency that were occupied by non-Administration employees. The presiding officials held that these petitioners were not entitled to such positions since if such positions had been offered to former Administration employees they would have been offered to employees who had higher ratings on the master retention list than the petitioners.

## II

Since the appeals of each category of petitioners involve different facts and legal issues, each category will be considered separately.

A. *Petitioner Pizzi.* At the time the Community Services Administration was abolished, Vito Pizzi was employed as the Chief of the Financial Systems Branch in

the Administration's New York office. The petitioner claimed that he was entitled to a GS–12 systems accountant position at the new agency that was occupied by Mr. James Pagett. Although the petitioner acknowledged that Mr. Pagett had a higher priority on the master retention list than he did, the petitioner argued that Mr. Pagett was not entitled to the position because Mr. Pagett did not possess the minimum qualifications required for it.

The minimum qualifications for a GS–12 systems accountant position are at least 24 semester hours of education in accounting and at least three years of professional accounting experience. Both parties agree that Mr. Pagett meets the educational requirements for the position, but the petitioner argues that Mr. Pagett lacks the requisite professional experience in accounting.

Mr. Pagett began his professional career as an internal auditor for a large textile manufacturer. His responsibilities in that position included conducting audits of the manufacturer's plants and offices in the United States and Canada. After a year in this position, Mr. Pagett joined the Community Services Administration.

From 1969 until July of 1978, Mr. Pagett worked as a community action field representative (GS–12) with the Administration. He was then reassigned to the position of systems accountant (GS–12), and served in this position from July 23, 1978 until September 25, 1978. Mr. Pagett was promoted to the position of community action field representative (GS–13), and worked in that position from September 25, 1978 until September 30, 1981, when the Community Services Administration was abolished.

Mr. Pagett's work as an internal auditor and as a systems accountant constituted professional accounting experience. The time spent in these positions totals fourteen months, however, and as noted previously, Mr. Pagett's current position requires that he have three years of accounting experience.

The government argues that Mr. Pagett's work as a community action program field representative also qualifies as professional accounting experience. As a field representative, Mr. Pagett was responsible for evaluating a number of Community Services Administration programs with a total funding of $2.5 million. He gave recipients of Community Services Administration funds "expert advice and assistance to help [them] determine needs, develop priorities, analyze resources, establish goals, develop strategies ... compare expenses with budgets." In addition, Mr. Pagett was responsible for comparing funding applications and eligibility data with "national legislative mandates and federal rules and regulations," and for making funding decisions based on such evaluations.

The Board found that Mr. Pagett met the minimum qualifications for his position, and we must accept that determination if it is supported by substantial evidence. *See Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984); *Phillips v. United States Postal Serv.*, 695 F.2d 1389, 1390 (Fed.Cir.1982). The petitioner has not provided any direct evidence that Mr. Pagett is not qualified for his current position as a GS–12 systems accountant, and in the absence of such a showing we decline to disturb the finding of the Board that he was so qualified. *Cf. Certain Former CSA Employees*, 762 F.2d at 984 (burden is on employee who claims a position at the new agency to show that employee who occupies that position is not entitled to it).

The Board reasonably concluded that Mr. Pagett's twelve years of experience as a field representative, performing such tasks as comparing budgets with expenses, determining funding eligibility requirements and making funding decisions, was sufficient to qualify as the equivalent of two years of professional accounting experience. Mr. Pagett had a degree in business administration and had taken twenty-six semester hours in accounting. As a field representative, Mr. Pagett apparently used his accounting skills in advising and regulating participants in the Community Services Administration's programs.

If Mr. Pagett was not qualified for the systems accountant position he received in

1981, he also was not qualified when the agency assigned him to the identical position in 1978. It is unlikely that the government would twice assign an employee to a position for which he was not qualified.

■ An agency has wide discretion in conducting a reduction in force. *Pettis v. Department of Health and Human Servs.*, 803 F.2d 1176, 1179 (Fed.Cir.1986); *Gandola v. Federal Trade Comm'n*, 773 F.2d 308, 313 (Fed.Cir.1985); *Madsen v. Veterans Admin.*, 754 F.2d 343, 345 (Fed. Cir.1985). Under ordinary circumstances, "this court will not disturb a reduction in force absent a clear abuse of discretion or a substantial departure from applicable procedures." *See Pettis*, 803 F.2d at 1176. We cannot say that, in concluding that Mr. Pagett was qualified for the accountant position with the new agency, the Board made a decision that was unsupported by substantial evidence or otherwise abused its discretion.

Since Mr. Pagett is qualified for the accountant position, Mr. Pizzi has not identified a position at the new agency for which he is qualified that is occupied by an employee with no entitlement to it. Accordingly, we affirm the Board's decision sustaining Mr. Pizzi's separation.

B. *Petitioners Hudgins and Pilgrim.* Petitioners Hudgins and Pilgrim were previously employed as secretaries at the Community Services Administration. They claim entitlement to six positions at the new agency: one GS–3 and one GS–6 clerk-typist position in the transition function, one GS–2, one GS–3, and one GS–4 clerk-typist position in the Office of the Inspector General, and a GS–8 secretary temporary position in the Office of Special Grants.

■ The presiding official correctly held that the petitioners were not entitled to the positions they claimed since the petitioners had effectively waived their right to such positions. In May of 1982, more than seven months after the Administration was abolished, Ms. Pilgrim indicated on her personal qualifications statement that she would not accept a temporary position or a position below the GS–8 level. Likewise,

Ms. Hudgins completed a personal qualifications statement in August of 1984 indicating that she would not accept a temporary position or a position below the GS–8 or GS–9 level.

■ By so stating, the petitioners effectively rejected offers for temporary positions and positions below the GS–8 level. An agency is not required to offer a position to an employee who has indicated he will not accept this position. *Cf. Pettis*, 803 F.2d at 1178–79 (where employee rejects a properly offered position, employee is not entitled to offer of another similar position). Five of the positions to which the petitioners claim entitlement were below the GS–8 level. The presiding official correctly found that the petitioners had waived their right to these positions by indicating that they would not accept positions below the GS–8 level.

One of the positions claimed by the petitioners, the Mills position, was at the GS–8 level. The presiding official found, however, that this position was temporary and that the petitioners had waived their right to this position by indicating on their personal qualifications statements that they would not accept a temporary position. Moreover, the presiding official noted that Ms. Hudgins had indicated only one week prior to her hearing that she would not accept a temporary position. As the petitioners concede, the Mills position was scheduled to be abolished "within the foreseeable future" at the time it was created, and was in fact abolished by November 22, 1982, within fourteen months after its creation.

■ Under such circumstances, that presiding official properly concluded that the Mills position was temporary, *cf. Ashton v. Civiletti*, 613 F.2d 923, 929 (D.C.Cir.1979) (job treated as permanent where it was referred to as "temporary indefinite" and it was made clear that employee would not be dismissed so long as he performed satisfactory work), and that the petitioners had waived their right to be considered for temporary positions. We therefore affirm the presiding official's determination that peti-

tioners Hudgins and Pilgrim did not establish their right to any position at the new agency.

C. *Petitioners Acerno, Anderson, and Watson.* Mr. Acerno, Ms. Anderson and Ms. Watson had all been field representatives at the Community Services Administration. All three petitioners claimed entitlement to two field representative positions at the new agency that had been assigned to individuals who were not former employees of the Community Services Administration.

There is no dispute that each of these petitioners was qualified for the positions they sought, that those positions had been transferred from the Community Services Administration, and that these petitioners were entitled to the positions as against the persons who received them. The presiding officials held, however, that if the positions had been offered to employees of the Community Services Administration, the offers first would have been made to employees who had a higher retention priority on the master retention list than the petitioners. In effect, the presiding officials held that the agency could deny the petitioners' claim to positions occupied by non-Administration employees on the ground that other Administration employees who had not appealed their separations had greater rights to those positions.

■ This conclusion was erroneous. Under *Certain Former CSA Employees,* 762 F.2d at 984, an employee was entitled to prevail on remand if (1) he could show that he was qualified for a continuing position at the new agency and that that position was offered to an individual with lower retention standing on the master retention list or no initial entitlement to transfer, and (2) the agency failed to refute this showing. We stated that the only issue on remand was to be "the relative retention priorities of the employee claiming the particular position and the employee appointed to it." *Id.*

In the present case, the petitioners have higher retention priorities than the employees who hold those positions since the latter are not former Administration employ-

ees. The agency cannot refute this conclusion by showing that other Administration employees who did not appeal their separations were entitled to the positions the petitioners claimed. It is "those former [Community Services Administration] employees who continued individual appeals ... that must be considered vis a vis those people who actually obtained the positions." *Alston v. Department of Health and Human Servs.,* No. 03518210189–1 (Sept. 30, 1985). As the Board has indicated, the fact that other non-appealing former Administration employees have higher retention priority than the employees who appeal is "immaterial" to the question whether a particular employee is entitled to a particular position because he has a greater entitlement to that position than the person who currently occupies it. *Putnam v. Department of Health and Human Servs.,* 31 M.S.P.R. 427, 429 n. 3 (1986).

The government contends, however, that the two positions these petitioners sought, which are referred to as "transition" positions, are temporary positions to which these petitioners were not entitled. *See Menoken,* 784 F.2d at 369 (employee had no right to position occupied by Department of Justice employee on temporary detail to new agency); *see also Starling v. Department of Housing & Urban Dev.,* 757 F.2d 271, 273 (Fed.Cir.1985) (employee has no right to compete for temporary position in another competitive level in a reduction in force). In a prior decision, the Board indicated that although positions in the transition function were temporary, former employees of the Community Services Administration had a right to compete for them since the transition function had transferred to the new agency. *See Alston, supra.*

■ Since the presiding officials in the present case did not address these issues, we shall remand the appeals of petitioners Acerno, Anderson, and Watson to the Board for further consideration. *Cf. Securities and Exch. Comm'n v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) (court must af-

firm agency determination, if at all, on ground that agency gave for decision). On remand, the Board must determine (1) whether the positions sought by the petitioners were temporary, and if so (2) whether the petitioners were nonetheless entitled to compete for these positions since they involved functions that were transferred to the new agency.

If the Board should conclude that these three petitioners were entitled to those positions in place of the persons to whom the positions were assigned, the Board then will have to determine the relative priority of entitlement among petitioners Acerno, Anderson, and Watson to the two positions involved. Only two of these petitioners could have been entitled to the two positions all three of them are seeking. *Cf. Former CSA Employees*, 762 F.2d at 984.

## CONCLUSION

The Board decisions sustaining the separation of Mr. Pizzi, Ms. Hudgins, and Ms. Pilgrim are affirmed. The Board decisions sustaining the separations of Mr. Acerno, Ms. Anderson, and Ms. Watson are reversed, and the cases of those petitioners are remanded to the Board to determine (1) whether the two positions these former employees seek were temporary and, if they were, (2) whether the petitioners nevertheless are entitled to these positions because they are "transition" positions.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.