Beverly HAYES, et al., Petitioners,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

Nos. 86–893, 86–928, 86–942, 87–3028 and 87–3032.

United States Court of Appeals, Federal Circuit.

Sept. 17, 1987.

Phillip R. Kete, Takoma Park, Md., for petitioners.

Linda Maramba, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for respondent. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Asst. Director. Also on the brief was Dan Edelman, Dept. of Health and Human Services, of counsel.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and BENNETT, Senior Circuit Judge.

FRIEDMAN, Circuit Judge.

These are consolidated appeals that challenge on various grounds decisions of the Merit Systems Protection Board (Board), (1) holding that 15 of the petitioners properly had been denied positions at the newly created Office of Community Services upon the loss of their positions at the Community Services Administration in a reduction in force resulting from the abolition of the latter agency, and (2) limiting the back pay of the sixteenth petitioner, who received a position at the Office of Community Services approximately nine months after that agency was created. We affirm the Board's decisions sustaining the separation of petitioners Boone, Brown, Cabey, Clark, Hayes and Myers, and limiting the back pay of petitioner MacKenzie. We vacate the decisions sustaining the separation of petitioners Allen, Edwards, Johnson, Price, Saunders, Smith, Thomas, Walston and Webb, and remand their cases to the Board for further proceedings.

I

A. The background facts involved in this appeal are detailed in this court's decision in *Certain Former CSA Employees v. Department of Health and Human Servs.*, 762 F.2d 978 (Fed.Cir.1985) (*Former CSA Employees*), and summarized again in *Menoken v. Department of Health and Human Servs.*, 784 F.2d 365 (Fed.Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 273, 93 L.Ed.2d 249 (1986). Briefly, the facts are as follows:

For many years, the Community Services Administration administered federal anti-poverty program grants to State community action agencies. Effective September 30, 1981, the Community Services Administration was abolished as an independent agency, and a new agency, the Office of Community Services, was established in the Department of Health and Human Services (Department). *See* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357. In *Former CSA Employees*, we upheld the Board's findings that a number of the functions of the Community Services Administration had been transfer-

red to the new agency, and we recognized that "all the Community Services Administration employees were 'identified' with" the transferred functions. 762 F.2d at 983.

At the time it was abolished, the Community Services Administration had more than 900 employees. The new agency, however, initially established only 165 positions to perform the functions that had been transferred from the Community Services Administration. Because the Community Services Administration had not maintained adequate personnel records, the government "could not reconstruct exact reduction-in-force priority registers for the Community Services Administration employees or determine the exact priorities among those employees for the new positions in the Office of Community Services." *Id.* at 981. Therefore, the Department created preference order master lists to determine which of the 900 former employees should be offered the 165 positions in the new agency.

In the consolidated appeal of former Community Services Administration employees who had not been selected for positions in the new agency under this procedure, the Board held that although the Department had not followed traditional reduction-inforce procedures, it was not necessary to invalidate the entire reduction in force. According to the Board:

> Where, as in this case, the ultimate question for resolution relates to the retention of substantially fewer employees than were necessary prior to the transfer, the agency's noncompliance with certain provisions of part 351 does not warrant unconditional reversal of the entire reduction in force since many of those employees would have been subjected to separation from the federal service in any event.

*Certain Former CSA Employees v. Department of Health and Human Servs.*, 21 M.S.P.R. 379, 393 (1984), *aff'd*, 762 F.2d 978 (Fed.Cir.1985) (consolidated appeal).

Following the consolidated appeal, the Board remanded the individual appeals to its regional offices for proceedings to determine whether any individual petitioner was entitled to retention. The Board ordered that, in these remand proceedings, each former Community Services Administration employee should show that he was identified with a function that was transferred from the Community Services Administration to the new agency and then should "identify a position or positions for which he was qualified that have been assigned to other employees with less retention standing or positions occupied by employees who had no initial entitlement to transfer." *Id.* at 393–94. In affirming the Board's decision, we concluded that "the Board has devised an appropriate procedure to determine whether any of the employees of the former agency who were not employed at the latter agency should have been so employed because of their retention priorities." *Former CSA Employees*, 762 F.2d at 985.

We pointed out that on remand the burden rested initially on the employee to show that there was a position at the new agency that had been assigned to another Community Services Administration employee with less retention standing or occupied by an employee with no initial entitlement to transfer. *Id.* at 984. If an employee made such a showing, the burden then would shift to the government "to refute that showing." *Id.* If the government could not do so, the employee would be entitled to the position claimed. We stated that "the only issue on the remand [would] be the relative retention priorities of the employee claiming the particular position and the employee appointed to it." *Id.*

B. All of the petitioners in the present case are former Community Services Administration employees. Fifteen of them make a variety of arguments to support their contention that the Board erroneously denied them positions at the new agency. Ms. MacKenzie, the only one of the petitioners who was awarded a position at the new agency, claims that the Board erroneously denied her the full amount of back pay to which she was entitled. Because these contentions involve different facts

and legal issues, we will deal with each of them separately.

## II

A. *Positions Outside of the New Agency.* Petitioners Cabey, Edwards, Johnson, Myers and Webb claim that they were entitled to positions with federal agencies other than the new agency. They assert that the function they performed at the Community Services Administration was transferred to an agency other than the new agency, and that they were entitled to "transfer with their function."

■ To prevail on remand before the Board, a former Community Services Administration employee was required to identify a "position in the new agency" that was occupied by a person with lower retention standing or no initial entitlement to transfer. *Former CSA Employees,* 762 F.2d at 984. Thus, as we held in *Menoken,* a former Administration employee had no right to a position outside the new agency. 784 F.2d at 369. In *Menoken,* the petitioner, who had been an attorney-advisor at the Administration, claimed that she was entitled to attorney positions outside of the new agency. We rejected the claim:

> The functions that were transferred upon the abolition of the Community Services Administration were transferred solely to the new agency and not elsewhere within the Department [of Health and Human Services]. The only right the Community Services Administration employees had was to be transferred to "a position in the new agency" that had been given to a former Community Services Administration employee with lower retention rights than the protesting employee.... Attorney positions elsewhere in the Department did not become positions transferred from the Community Services Administration merely because the attorneys in those positions performed some legal work for the new agency.

*Id.*

■ The petitioners' claims to positions outside of the new agency are foreclosed not only by this court's decision in *Meno-*

*ken,* but also by the transfer-of-function regulations in effect at the time of the reduction in force, upon which the Board based its decision. Under 5 C.F.R. § 351.-203(h)(1) (1981), a transfer of function is defined as the transfer of "[t]he performance of a continuing function from one competitive area and its addition to one or more other competitive areas...." Under this regulation, a transfer of function occurs only when a function is transferred to another competitive area and the gaining area undertakes a class of activity it did not previously perform. *Kentner v. National Transp. Safety Bd.,* 20 M.S.P.R. 595, 597 (1984). Thus, an employee has no right to transfer with his function if the gaining office already performs the function and simply adds the employee's duties. *Walsh v. Environmental Protection Agency,* 25 M.S.P.R. 460, 465 (1984).

■ The petitioners have not shown that there has been a "transfer of function" between their positions at the Community Services Administration and any agency outside the new agency. Petitioners Cabey, Johnson and Myers were criminal investigators at the Community Services Administration. They assert that the function they performed was transferred to the Department of Justice or the Department of Health and Human Services Office of Inspector General, since those agencies now do the criminal investigation work that the Administration had done. As the Board correctly held, however, both the Justice Department and the Office of Inspector General "already did criminal investigations." Accordingly, there was no transfer of function from the Community Services Administration to those agencies. *See Cabey v. Department of Health and Human Servs.,* Nos. DC03518210092-1, DC03518210067-1, DC03518213027-1, slip. op. at 7 (MSPB September 30, 1985).

■ Petitioners Edwards and Webb, who held computerized information processing positions at the Community Services Administration, claim entitlement "to positions in whatever entity had been assigned the function they had worked for in [the

Community Services Administration].…" These petitioners have failed to demonstrate, however, (1) that the Administration's computer information processing function was transferred to any agency other than the new agency, or (2) that if such a transfer did occur, the receiving agency did not perform that function prior to the transfer.

B. *Position in Close-out Function Assigned to Ms. Mary Ellyn.* Petitioner Gaylyn Boone contends that she should have been appointed to the GS–345–13 closeout function position to which Ms. Mary Ellyn was assigned after that position became vacant when Ms. Ellyn was appointed to a GS–345–14 position in the transition function. The Board found that, although Ms. Ellyn was appointed to the position claimed by Ms. Boone, she never actually served in that position. Accordingly, the Board held that when Ms. Ellyn was subsequently assigned to a position in the transition function she did not leave a "vacancy" that Ms. Boone was entitled to fill. *Alston v. Department of Health and Human Servs.,* No. DC03518210189–1, slip op. at 10 (MSPB Sept. 30, 1985).

▆▆ The Board properly found that Ms. Boone had no right to the position that was originally assigned to Ms. Ellyn. As noted previously, *see supra* p. 1096, a former Administration employee was entitled to prevail on remand only if he showed that there was a position in the new agency that was assigned to another employee with less retention standing or occupied by an employee who had no initial entitlement to transfer. *Former CSA Employees,* 762 F.2d at 984. Ms. Boone has not shown that the position to which she claims entitlement was assigned to another employee with lower retention standing since Ms. Ellyn, who was assigned that position, had a higher retention priority on the master retention list than did Ms. Boone.

Ms. Ellyn was appointed to the GS–13 closeout position in 1981. From the date of her appointment, however, she was detailed to a GS–14 transition grant position. On April 18, 1982, she was appointed to this transition position on a temporary pro-

motion basis and served in that position until its abolishment. Thus, Ms. Ellyn never "occupied" the close-out position to which she was appointed.

Indeed, no agency employee ever occupied the position originally assigned to Ms. Ellyn. Thus, the duties of this position apparently were unnecessary to carry out the work of the agency. For this reason, no "vacancy" occurred when Ms. Ellyn was reassigned to another position in the agency. We refuse to require the agency to assign Ms. Boone to a position which never was occupied and which the agency apparently determined it does not need.

C. *Temporary Position Occupied by Edmond Kelly.* Beverly Hayes contends that she is entitled to the GS–303–13 outplacement coordinator position that was occupied by Mr. Edmond Kelly. Mr. Kelly's position began on October 1, 1981. *See Hayes v. Department of Health and Human Servs.,* No. BN03518210037–1, slip op. at 3 (MSPB October 24, 1985). The Board found that Ms. Hayes was not entitled to this position because it lasted less than three months:

> 5 C.F.R. § 351.603 requires that an employee may have assignment rights to a position for which she is qualified "which will last at least three months". According to the SF–52 provided by the agency, Mr. Kelly received an appointment "not to exceed December 30, 1981".… The agency also offered an almost illegible copy of Mr. Kelly's termination SF–50. This document reflects that his appointment was terminated in the month of December, but the day and the year is illegible. However, his salary remained the same during this period; thus he received no cost of living increase, as he would have if the year were other than 1981. In addition, the only document in evidence which sets out the terms of Mr. Kelly's appointment states that it was not to exceed December 30, 1981. Therefore, I find, particularly in the absence of any evidence to the contrary, that Mr. Kelly's appointment terminated no later than December 30, 1981.

... [The petitioner] can claim assignment rights only to positions lasting three months. [The Kelly position] did not meet this criteria....

Accordingly, I find that the agency has established that no infringement of [the petitioner's] substantive rights occurred when she was separated.

*Id.* at 3–4.

The petitioner does not dispute that under 5 C.F.R. § 351.603 (1981), a former Administration employee has no right to a position lasting less than three months. She asserts, however, that the Board erred in determining that the Kelly position ended on December 30, 1981 rather than on December 31, 1981. If the position ended on December 31, according to the petitioner, it lasted for three months and she, rather than Mr. Kelly, should have been appointed to it.

■ We conclude that the Board's finding that the Kelly position ended on December 30 rather than December 31 is supported by substantial evidence. *See* 5 U.S.C. § 7703(c). Mr. Kelly was appointed effective October 1, 1981, and his "appointment [was] not to exceed December 30, 1981." There is no evidence that his appointment extended beyond that date. This position was abolished in December of 1981. This evidence supports the Board's finding that the position ended on December 30, 1981, and therefore did not last three months.

The petitioner apparently tries to equate the 90 days the position lasted to three months. Unlike other regulations, however, *see, e.g.,* 5 C.F.R. § 351.608 (1981), the regulation here involved speaks in terms of "three months" rather than "90 days." 5 C.F.R. § 351.603 (1981) (an employee has the right to compete for a position "which will last at least three months").

D. *The Block Grant Function.* All of the petitioners claim that they are entitled to positions in the new agency's block grant function, on the theory that the Community Services Administration was "replaced" by the new agency under 5 U.S.C. § 3503(b) (1982), and that they are, therefore, entitled to all positions in the new agency for which they are qualified. Section 3503 provides:

(a) When a function is transferred from one agency to another, each competing employee in the function shall be transferred to the receiving agency for employment in a position for which he is qualified before the receiving agency may make an appointment from another source to that position.

(b) When one agency is replaced by another, each competing employee in the agency to be replaced shall be transferred to the replacing agency for employment in a position for which he is qualified before the replacing agency may make an appointment from another source to that position.

■ This provision gives employees of one agency the right to be transferred to positions in another agency under two circumstances: (1) when the function they perform in one agency is transferred to another agency (section 3503(a)), and (2) when the agency in which they work is "replaced" by another agency (section 3503(b)). In *Former CSA Employees,* we affirmed the Board's determination that certain functions, such as the closeout and Inspector General functions, had been transferred from the Community Services Administration to the Office of Community Services. Former Administration employees were, therefore, entitled to positions in those functions under section 3503(a). 762 F.2d at 981–83.

We concluded, however, that the Board had properly determined that the block grant function in the new agency had not been transferred from the Community Services Administration, but was instead a new and distinct function in the Office of Community Services. *Id.* at 983; *see also Pettis v. Department of Health and Human Servs.,* 803 F.2d 1176, 1177 (Fed.Cir. 1986); H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 767–78 (1981), *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 1010, 1129 ("The conferees emphasize that the Community Services Administration, as an agency, is terminated and that the ...

Block Grant is clearly a new program within the Department of Health and Human Services, not a transfer of authority."). Accordingly, the petitioners had no right to positions in the block grant function under section 3503(a).

■ Nor do the petitioners have any right to block grant positions under section 3503(b). Under that section, when one agency is "replaced by another," each employee in the replaced agency is entitled to positions for which he is qualified in the replacing agency before the latter may appoint someone not from the replaced agency to that position.

■ This provision is not applicable in the present case because the Community Services Administration was not "replaced" by the Office of Community Services. "Congress clearly intended to abolish [the Community Services Administration] and expressed the view that [the Office of Community Services] was a new agency which had functions distinct from [the Community Services Administration]." *Certain Former CSA Employees*, 21 M.S.P.R. at 389. In the consolidated appeal, the Board described the significant differences between the Administration and the new agency:

A comparison of the organizational structure and the specific delegations of authority for [the Community Services Administration] with the delegations of [the Office of Community Services] reveals significant differences in content and substance. [The Community Services Administration] had authority to select and award specific grants to [Community Action Agencies within the states] whereas [the Office of Community Services] does not.... [The Community Services Administration's] oversight responsibilities entailed substantial monitoring and auditing procedures to ensure compliance with its established standards and regulations. In contrast, [the Office of Community Services'] oversight responsibility is limited and its control over the expenditure of funds is severely restricted....

Unlike the original authorization to [the Community Services Administration] of broad administrative powers and responsibilities, the legislative history of the [Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35] contains strong language manifesting the breadth of the Congressional limits placed on the newly established [Office of Community Services].

*Id.* at 385–86 (footnotes omitted).

The Administration was not "replaced" by the Office of Community Services "because a large segment of [the Community Services Administration's] 'authorities, powers and duties' [did not continue] in an identifiable form at a new location." *Id.* at 389. Because no "replacement" occurred, the petitioners had no entitlement under section 3503(b) to positions in the block grant function at the new agency.

The petitioners assert that the Board held in the consolidated appeal that "employees can not have any right [to positions in the new agency] under the agency replacement statute, 5 U.S.C. § 3503(b), except to the extent it could be found that there had been a transfer of function under the transfer of function statute, 5 U.S.C. § 3503(a)." They claim that the Board treated section 3503(b) as a "dead letter" because it found that that provision could come into play only if section 3503(a) also were applicable.

The petitioners misread the Board's decision. Nowhere in its opinion did the Board state that an employee's right to a position in the new agency under section 3503(b) required that he also have the right to such position under section 3503(a). 21 M.S.P.R. at 389. Instead, the Board recognized that sections 3503(a) and 3503(b) were separate provisions, each of which could entitle employees of one agency to be appointed to positions in another agency. The Board correctly held, however, that neither provision gave the petitioners the right to positions in the block grant function because (1) the block grant function had not been transferred to the new agency (§ 3503(a)), and (2) the new agency did not replace the

Community Services Administration (§ 3503(b)).

E. *Field Representative and Program Analysis Positions.* Petitioners Bernard Cabey, Ernestine Johnson and John Myers argue that they are entitled to a large number of series 301 field representative and series 345 program analyst positions at the new agency. The Board denied the petitioners' claims to these positions on the ground that the petitioners did not possess the requisite qualifications for the positions that they sought. *Cabey*, slip op. at 6.

■ An agency has wide discretion in conducting a reduction in force. *Pettis*, 803 F.2d at 1179; *Gandola v. Federal Trade Comm'n*, 773 F.2d 308, 313 (Fed.Cir. 1985); *Madsen v. Veterans Admin.*, 754 F.2d 343, 345 (Fed.Cir.1985). Absent evidence of patent unfairness or bad faith, the Board properly may defer to an agency's determination of the requirements that an individual must satisfy to qualify for a particular position. *See Travaglini v. Department of Educ.*, 18 M.S.P.R. 127, (1983); *Thomas v. Department of Army*, 4 MSPB 336, 4 M.S.P.R. 261 (1980).

■ There is no evidence in the present case that the agency acted unfairly or in bad faith in determining that the petitioners' experience as criminal investigators did not provide the necessary qualifications to serve as series 301 field representatives or series 345 program analysts. In upholding that determination, the Board relied on testimony at the hearing that a personnel specialist had determined in late 1981 that petitioners Cabey and Myers were not qualified for any of the jobs at the new agency that had been filled by other employees with lower rankings on the master retention list. No qualification determination was made for Ms. Johnson, since her number 259 ranking on the master retention list was so low that all available positions were filled before she could be considered for a position.

To qualify for a GS–301 series position, an employee's experience must show that he has the ability to function at the specific grade level of the position he seeks. The petitioners did not show before the Board—

and they have not shown in this appeal—that their work as criminal investigators gave them the specific skills necessary to perform in a particular series 301 field representative position.

The qualification standards for the series GS–345 program analyst positions are as follows:

1. *General experience.* Experience in administrative, professional, technical, investigative, or other responsible nonclerical work.

2. *Specialized experience.* Progressively responsible experience in work requiring the making of analyses, evaluations, or other substantive determinations with regard to current or projected operating programs. Experience of this kind is normally acquired in positions concerned with the performance of, or with providing nonclerical assistance in, operating, managerial, analytical, planning, or advisory work involving program interrelationships or interprogram integration.

Office of Personnel Management Handbook, X–118, GS–345 (May 1977).

As the Board noted, "[t]o qualify for GS–345 series positions, a person must have experience in work requiring the making of analyses, evaluations or other substantive determinations with regard to current or projected operating programs." *Cabey*, slip op. at 6. The Board examined the petitioners' SF–171 personal qualifications statements and made an "independent determination" that the petitioners' criminal investigation work did not provide them with "the depth and level of experience involving program interrelationships or interprogram integration" that was necessary to qualify for a series GS–345 position. *Id.*

The petitioners have not submitted any direct evidence that they have the necessary qualifications for either the series 345 or the series 301 positions. Instead, they rely almost exclusively on the testimony of Mr. John Myers, one of the petitioners in this case, to support their contention that they were entitled to such positions. Ac-

cording to Mr. Myers, the criminal investigative work performed by all three of the petitioners gave them "knowledge of program activities [that] was on a par [with the] field representatives and program analysts" who occupied the series 301 and series 345 positions.

We conclude, however, that the Board was justified in relying on its own independent review of the petitioners' qualifications as well as agency testimony that the petitioners were not qualified for the positions they sought, rather than the testimony of Mr. Myers, in finding that the petitioners were not qualified for positions in the GS–301 or GS–345 series. There is no indication that Mr. Myers is a personnel specialist who is familiar with the detailed requirements of those positions. Moreover, since Mr. Myers was testifying about his qualifications and those of his former subordinates at the Community Services Administration, the Board justifiably could have viewed his opinion as not wholly objective. The Board's determination that petitioners Cabey, Johnson and Myers were not qualified for the series 301 field representative and series 345 program analyst positions at the new agency was supported by substantial evidence.

F. *The Master Retention Lists.* All of the petitioners except Beverly Hayes object to the Board's use of the master retention lists to determine their retention priority for positions at the new agency. According to these petitioners, the Board was required to recreate standard reduction-in-force registers to determine their relative retention rights.

This court, however, has determined that the Board could rely on the master lists to determine retention priorities for positions at the Office of Community Services. *Ahlberg v. Department of Health and Human Servs.*, 804 F.2d 1238, 1245 (Fed.Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3183, 96 L.Ed.2d 672 (1987); *Pettis,* 803 F.2d at 1179; *Menoken,* 784 F.2d at 369–70; *Certain Former CSA Employees,* 762 F.2d at 985. Those decisions control.

■ The government urges that sanctions should be imposed against the peti-

tioners and their attorney for presenting an argument that this court repeatedly has rejected. *See Moir v. Department of the Treasury,* 754 F.2d 341, 343 (Fed.Cir.1985); *Beachboard v. United States,* 727 F.2d 1092, 1094–95 (Fed.Cir.1984). The petitioners respond that they raised the point only to preserve it for seeking *in banc* consideration and possible Supreme Court review.

The discussion of the issue in the Statement portion of the petitioners' opening brief occupies two pages. The discussion in the Argument portion occupies less than a page, and states only that the petitioners will file a suggestion for initial *in banc* consideration of the point. (They filed such a suggestion, which the court denied.) The government's discussion of the point in its brief occupies only two pages, arguing that the court repeatedly had rejected the contention.

Considering all the circumstances, we cannot say that the petitioners' raising of the issue as they did warrants the imposition of sanctions upon them or their counsel.

G. *Tenure Group III Employees.* All petitioners except Ernestine Johnson contend that they are entitled to certain tenure "Group III" positions. These petitioners, all of whom are classified in tenure Group I, claim that they have the right under Chapter 330, Section 2–3, of the Federal Personnel Manual to displace any tenure Group III employee within their commuting area. The petitioners argue that the Board erroneously denied their motion to compel production of a list of available Group III positions, and thereby effectively denied them the right to determine the Group III positions for which they were entitled to compete.

■ Only five of the petitioners—Edwards, Smith, Thomas, Walston and Webb—filed with the Board a motion to compel a list of available Group III positions. They are the only ones, therefore, who can raise the issue whether the Board improperly denied that motion. *Meglio v. Merit Sys. Protection Bd.,* 758 F.2d 1576, 1577 (Fed.Cir.1984) (issue not raised before

the Board may not be raised for the first time on appeal); *see also Lizut v. Department of the Army,* 717 F.2d 1391, 1396 (Fed.Cir.1983); *Smith v. Office of Personnel Management,* 31 M.S.P.R. 406, 410 (1986). Although petitioner Clark requested general information regarding the manner in which Group III positions were filled, he did not specifically request information regarding available Group III positions. *See Belton v. Department of Health and Human Servs.,* 31 M.S.P.R. 414, 422 n. 4 (1986).

 We conclude that the Board improperly denied the motion to compel production filed by petitioners Edwards, Smith, Thomas, Walston and Webb. The agency recognized during the consolidated proceedings that the Federal Personnel Manual allowed tenure Group I employees to displace certain employees classified in tenure Group III:

> The [Federal Personnel Manual] at Chapter 330, Subchapter 2–3, and Department Instructions at 351–1–60, A.4, allow Group I employees who do not receive appointments in their competitive area to displace certain Group III employees in the commuting area. Group III employees whose positions have been formally designated trainee or developmental or whose displacement would create an undue interruption to the agency mission or project are excepted.
>
> Former [Community Services Administration] employees have not yet displaced any Group III employees. Mr. Mischel testified that the displacement process is cumbersome and difficult and explained the causes for delay.... As Mr. Mischel further testified, if any former [Community Services Administration] employee is offered and accepts the opportunity to displace a Group III employee, he or she will be given back pay to the date that the offer would have been made if the process could have been completed in a timely manner.

Department of Health and Human Services' Post-Hearing Brief at 82 (footnote omitted).

The full Board has indicated that former Community Services Administration employees have a right to compete for tenure Group III positions:

> [The petitioners] have asserted that [Department of Health and Human Services] regulations allow group I and group II employees to displace group III employees during a reduction in force. This assertion appears to be correct.... In addition, the agency's argument that rights to group III positions must be the subject of a separate appeal under 5 C.F.R. part 330 is not persuasive, since the agency in this case granted its employees the assignment rights in question in its reduction-in-force regulations.

*Belton,* 31 M.S.P.R. at 422.

During the individual remand proceedings, petitioners Edwards, Smith, Thomas, Walston and Webb submitted the following interrogatory:

> INTERROGATORY NO. 6. Provide a list of all positions (including title, series, grade, organizational location, and name of incumbent) in the Washington Metropolitan area of the Department of Health and Human Services which were filled by employees in tenure group III as of October 1, 1981.

When the agency did not produce the requested information, the petitioners filed a motion to compel production. They stated that it was "beyond doubt that the agency regulations require that group I employees released from their competitive levels are entitled to displace group III employees" and that "[each petitioner] needs to know what group III positions existed in the commuting area as of October 1, 1981, in order to determine which ones he or she is qualified for." The presiding official denied the petitioners' motion to compel production of the list of available Group III positions, however, on the ground that the information sought by the interrogatory was not relevant to the petitioners' appeal.

The only issue before the presiding official on remand from the Board was whether a former Community Services Administration employee could show that there was a position at the new agency for which he

was qualified that had been assigned to an employee with lower retention standing or no initial entitlement to transfer. *Former CSA Employees*, 762 F.2d at 984. The agency has conceded—and the Board has held—that former Community Services Administration employees had the right to compete for certain tenure Group III positions. The only way in which the petitioners effectively could identify Group III positions to which they were entitled was through production of a list of the positions that were available in that tenure group. Once the petitioners obtained this list, they could, potentially, identify Group III positions that were assigned to employees who had lower retention standing or no initial entitlement to transfer.

Thus, the information sought in the discovery request was relevant to the issue in the remand proceedings. The presiding official erred in denying production of this information. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) ("relevant" information for discovery purposes "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *see also Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.")

We therefore vacate the Board decisions sustaining the dismissals of petitioners Edwards, Smith, Thomas, Walston and Webb, and remand their cases to the Board for further proceedings regarding their entitlement to Group III positions. Since the petitioners have no right to positions outside of the new agency, *see supra* part II–A, the petitioners are entitled to information regarding Group III positions only in the Office of Community Services.

H. *Positions Within the Transition Function.* Petitioners Allen, Johnson, Price, Saunders, Smith, Thomas, Walston and Webb contend that they are entitled to GS–3 clerk-typist positions occupied as of May 1982 by Ms. Judy Briggs (the Briggs position) and by Mr. Larry Hoke (the Hoke position). Petitioners Allen, Johnson, Price and Saunders also claim entitlement to a GS–8 secretarial position occupied as of May 1982 by Ms. Elizabeth Bowie (the Bowie position).

When the petitioners appealed to the Board, the presiding official ruled that former Community Services Administration employees were entitled to compete for positions within the transition function at the new agency. *Alston v. Department of Health and Human Servs.*, No. DC03518210189–1, slip. op. at 6 (Sept. 30, 1985). This determination was in accord with a number of decisions by other presiding officials, *see, e.g.*, cases cited in *Alston v. Department of Health and Human Servs.*, 30 M.S.P.R. 697 n. 1 (1986), and was based on the Board's holding in the consolidated appeal, 21 M.S.P.R. at 388–89, that the transition function had transferred from the Community Services Administration to the new agency.

Although the presiding official in the present case acknowledged the petitioners' right to compete for positions within the transition function and awarded a number of such positions to other employees who were parties to the same appeal, she apparently failed to consider the petitioners' rights to the Bowie, Briggs and Hoke positions. *Alston*, slip. op. at 6–8. The agency's records indicate that these positions were identified with the transition function. *See* Petitioners' Appendix at 82, 85 and 89 (list of positions at the Office of Community Services filled as of May 10, 1982).

The government contends that the petitioners have no right to the Bowie, Briggs and Hoke positions because these positions were temporary appointments and an employee has no right to a temporary position in a reduction in force. *See Menoken*, 784 F.2d at 369 (employee had no right to position occupied by Department of Justice employee on temporary detail to new agency); *Starling v. Department of Housing and Urban Dev.*, 757 F.2d 271, 273 (Fed.Cir. 1985) (employee had no right to compete for a temporary position in another competitive level in a reduction in force). The

government points out that the Federal Personnel Manual, Chapter 351, Subchapter 4, § 4–2(b)(2) (1981), provides that an available position for reduction in force purposes is one which "is occupied by an employee subject to displacement ... by [a] released employee," and that only employees in tenure groups I, II, and III, not temporary employees, are subject to displacement in a reduction in force. *See* Federal Personnel Manual, Chapter 351, Subchapter 4, § 4–3(a) (1981).

■ The government urges that all transition function positions were temporary because that function was created to continue Community Services Administration functions only until states could begin to administer the federal block grants. The petitioners themselves concede that "every single position identified with the transition function was labelled 'temporary.'" The three positions claimed by the petitioners were of quite limited duration. The Briggs position lasted from January 11, 1982 until May 30, 1982, the Bowie position from March 29, 1982 until September 30, 1982, and the Hoke position from December 3, 1981 until May 15, 1982.

As we indicated in *Acerno v. Department of Health and Human Servs.*, 815 F.2d 680, 685–86 (Fed.Cir.1987), the Board has not determined whether former Administration employees have the right to positions in the transition function in the new agency, notwithstanding the fact that such positions are temporary. In a recent decision, the Board addressed a similar issue with regard to the "start-up" function at the new agency. *Dockterman v. Department of Health and Human Servs.*, 33 M.S.P.R. 522 (1987). In that case, the Board held that because the agency had chosen to fill temporary "start-up" function positions with former Administration employees, it was obligated to fill those positions in accordance with employees' rankings on the master retention list:

[W]e conclude that the agency, having chosen to fill temporary "start-up" positions in [the new agency] with former [Community Services Administration] employees who had been separated from

their permanent positions by RIF, was obligated to observe [preference order master list] priority in so doing.

*See also* 5 C.F.R. § 351.705 (where agency makes discretionary reassignments, rules for such reassignments "shall be uniformly and consistently applied in any one reduction in force").

We therefore shall vacate the Board decision upholding the removal of petitioners Allen, Johnson, Price, Saunders, Smith, Thomas, Walston and Webb and remand their cases to the Board for further consideration. On remand, the Board must determine, as a preliminary matter, whether the Bowie, Briggs and Hoke positions were, as the petitioners contend, associated with the transition function. If so, then "the Board must determine (1) whether the positions sought by the petitioners were temporary, and if so (2) whether the petitioners were nonetheless entitled to compete for these positions since they involved functions that were transferred to the new agency." *Acerno*, 815 F.2d at 686. If the Board concludes that the petitioners were entitled to the Bowie, Briggs and Hoke positions in place of the persons to whom the positions were assigned, the Board then will have to determine the relative entitlement among petitioners Allen, Johnson, Price, Saunders, Smith, Thomas, Walston and Webb to those positions. Only three of the petitioners could have been entitled to the positions all eight of them are seeking. *Id.*

■ I. *Back Pay Claim.* Ms. Mary A. MacKenzie worked as a community action program specialist at the Community Services Administration. In July of 1982, she was appointed to a position within the discretionary grants function of the Office of Community Services. Ms. MacKenzie contends that she is entitled to back pay from October 1, 1981. The Board awarded her back pay only from the pay period beginning closest to March 1, 1982.

In 1981, pursuant to the Omnibus Budget Reconciliation Act, Pub.L. No. 97–35, 95 Stat. 357, 519 (1981) (Budget Act), Congress abolished the Administration as an independent agency. The Budget Act also created the Office of Community Services

to continue some of the Administration's functions. The Budget Act did not, however, provide any money for the Office of Community Services' programs, personnel or administrative expenses.

On October 1, 1981, legislation was enacted that made appropriations available for the "close-out expenses of the Community Services Administration." Pub.L. No. 97–51, 95 Stat. 958, 967, Sec. 133. This legislation provided funds for 165 positions within the close-out and inspector general functions of the Office of Community Services. These positions were filled by former Community Services Administration employees after it was determined that the close-out and inspector general functions had been transferred to the Office of Community Services. The new agency did not, however, fill any positions in the discretionary grants function at that time.

When the Budget Act was enacted, Congress gave the Secretary of Health and Human Services the discretion to spend up to nine percent of the total block grant funds on the discretionary grants program. Pub.L. No. 97–35, 95 Stat. at 518. The Secretary initially determined, however, not to provide funding for the discretionary grants program, and accordingly, no positions in that function were created. By a letter dated January 18, 1982, a number of United States Congressmen requested that the discretionary grants program be fully funded, and the Secretary ultimately directed that money be allocated to fund that program. In June of 1982, the petitioner and other Community Services Administration employees were offered positions in the discretionary grants function.

Unlike other Office of Community Services Administration employees whose positions were funded as of October 1, 1981, Ms. MacKenzie's position in the discretionary grants program was not funded—and therefore could not have been filled—until after January 18, 1982. Because the petitioner's position did not exist until sometime after this latter date, the Board did not abuse its discretion in awarding her back pay from the pay period beginning closest to March 1, 1982.

The petitioner contends that she is entitled to back pay from October 1, 1981, under this court's decision in *Pettis*, 803 F.2d at 1179. In that case Ms. Pettis, a former Community Services Administration employee, was offered, but declined, a position in the discretionary grants program at the new agency. In her appeal to this court, she claimed entitlement to a number of other positions at the new agency. We held, however, that the petitioner's refusal of the position she was offered "barred further consideration for ... [other] positions allocated during the reduction in force." *Id.*

The petitioner relies on the statement in *Pettis* that if Ms. Pettis "had accepted the position [she was offered but declined], she would have been entitled to back pay from October 1, 1981." Our holding in *Pettis*, however, was that an employee who declines one proper offer during a reduction in force waives his right to other positions at the same grade level or lower grade levels. *Id.* That statement, therefore, was unnecessary to our disposition of the case and was dictum. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1394 (Fed.Cir.1987) ("any extension of [an] opinion's language beyond what was needed to decide the facts of that case is properly characterized as dicta").

Furthermore, there is no indication that the court in *Pettis* was aware that the discretionary grant function, unlike other transferred functions, was not funded on October 1, 1981. In these circumstances, and in light of our analysis of the Board's decision on this issue, it would be inappropriate to apply the *Pettis* dictum to this case. *See McDaniel v. Sanchez*, 452 U.S. 130, 141, 101 S.Ct. 2224, 2232, 68 L.Ed.2d 724 (1981) (where discussion of point in prior decision was "dictum unnecessary to the decision in that case" it will not be controlling in subsequent case where point is directly placed in issue).

## CONCLUSION

The Board decisions sustaining the separation of petitioners Boone, Brown, Cabey, Clark, Hayes, and Myers, and awarding

Ms. MacKenzie back pay from the pay period beginning closest to March 1, 1982, are affirmed.

The Board decisions sustaining the separation of petitioners Smith, Thomas, Walston and Webb are vacated and their cases are remanded to the Board to provide the information regarding Group III positions in the Office of Community Services specified in this opinion, and to determine (1) whether those petitioners are entitled to any of those positions and (2) whether they are entitled to the Briggs and Hoke positions because such positions were "transition" positions. The Board decisions sustaining the separation of petitioners Allen, Johnson, Price, and Saunders are vacated and their cases are remanded to the Board for consideration of their entitlement to the Bowie, Briggs and Hoke positions. The Board decision sustaining the separation of petitioner Edwards is vacated and his case is remanded to the Board to provide the information regarding Group III positions in the Office of Community Services specified in this opinion and to determine whether he is entitled to any of those positions.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.